[No. 8121.]

## DICKSON ET AL. V. DICK ET AL.

1. RECEIVER—*Of Corporation—Bound by Contracts of the Corporation.* The receiver of a corporation is bound by the completed contracts of such corporation. (587, 588.)

An irrigating company had executed contracts entitling certain consumers named to the perpetual use of water from its system, during the irrigating season in each year, and covenanting to deliver a deed of the water right "when water is made available;" by the completion of the

works, had received full payment of the stipulated consideration money, and delivered the stipulated volume, during three or four seasons. The contracts were held executed contracts, entitling the consumers named therein to the enjoyment of the rights thereby granted, and a decree authorizing the receiver to disregard them was reversed. (587, 588.)

2. CONTRACTS—*Construction.* In the interpretation of a contract, the subject matter, the sense in which the parties thereto would naturally understand the words used, and the objects and purposes to be accomplished thereby, are to be considered. (588.)

*Error to Huerfano District Court.* Hon. HENRY HUNTER, Judge.

Mr. WILLIAM H. DICKSON, Mr. W. E. CLARK, for plaintiffs in error.

Mr. CHARLES L. HENDERSHOT, for defendants in error.

WHITE, J., delivered the opinion of the court.

This controversy grows out of the receivership of two Colorado Corporations, to-wit: The Homestead Canal and Reservoir Company and The Dickson Reservoir and Irrigation Company, whose joint property constitute, in substantial effect, one irrigation system, the water of the latter being conveyed into its own reservoirs through the reservoirs of the former. George Dick had been appointed and qualified as receiver of each, and subsequently the proceedings were consolidated and continued as one action, though the orders made and entered therein involved the transactions of both corporations. In 1907 The Homestead Canal and Reservoir Company sold certain full paid water rights on the basis of approximately $15.00 per acre. Of these William H. Dickson purchased a right for 320 acres, rendering legal services therefor, and a contract conveying such right was duly executed and delivered to him under date of Dec. 19, 1907. Thereafter The Dickson Reservoir and Irrigation Company was organized, and Dickson subsequently purchased from it a like water right, the two water rights, however, to be used on the same 320 acres. William H. Dickson

assigned his contract and water right obtained from The Homestead Canal and Reservoir Company to Winona A. Dickson, and caused the water right purchased from The Dickson Reservoir and Irrigation Company to be by it conveyed to her by a like contract. Mrs. Dickson had made a desert land entry upon the land described in the water contract, and thereafter irrigated a portion of the same with the water rights aforesaid, complying with the provisions of the desert land act, and obtained title to the tract. April 27, 1908, The Dickson Reservoir and Irrigation Company sold to Ralph W. Smith, for a consideration of $2,400, water rights for a designated 160 acres of land, upon which he had made a desert entry; and on the 17th day of February, 1909, sold to T. S. Hertha water rights for 100 acres of land. Both the Smith and Hertha contracts and water rights were subsequently, for a valuable consideration, assigned to J. J. Richards. It is conceded by counsel for the receiver that each contract recites full payment of the purchase price therein designated, and that the record contains nothing to the contrary. The contracts recite that each water right entitles the owner thereof to the perpetual use of water from the system, for irrigation and domestic purposes, and that a deed therefor will be delivered to the owner of the contract "when such water is made available by construction of the said reservoir and supply canal thereto," upon receipt of the purchase price.

All of the aforesaid contracts were entered into, and assignments thereof made, at a time when both corporations were free from debt, and in no sense insolvent, and long prior to the appointment of the receiver. Upon petition of the receiver the court entered an order requiring the holders of all water contracts, whether full paid or otherwise, to bring the same into court and have their validity adjudicated. Thereupon plaintiffs in error, among others, filed their respective contracts hereinbefore designated. The receiver, claiming that such contracts were executory, and bur-

densome to the estate, elected to disregard them, and upon a hearing had before the court, his action in the premises was confirmed, and an order entered to that effect. There was embodied in the order of confirmation a provision that the aforesaid contract holders whose contracts were thus cancelled, should be permitted to purchase of the receiver new water rights, and the receiver was authorized to execute contracts therefor, upon payment of a designated sum, much greater than the price fixed in the original contracts, and that in payment therefor they should be allowed, respectively, by the receiver a designated credit, presumably the consideration already paid. The plaintiffs in error severally objected to the action of the court in the premises, assigned error thereon, and have brought the matter here for review.

The facts of the case and the action of the court in the premises make of this a very anomalous proceeding. The respective complaints, upon which the receiver was appointed, disclose that the plaintiffs therein, and the plaintiffs in error here, as well as others, had purchased water rights from one or both of the corporations, and that plaintiffs therein had paid only a portion of the purchase price of such water rights; that the reservoirs and canals of the companies were out of repair, and the corporations were severally unable to prosecute the work of repairing the same; that unless the property of the corporations be protected and preserved by the court, and the contracts of plaintiffs therein, and of those similarly situated, be carried out and performed, the interest of plaintiffs and others similarly situated would be lost. The relief asked in each complaint was the enforcement of the respective contracts, the conservation of the property of the corporation for the performance and satisfaction of such contracts, and others of similar character, and the appointment of a receiver for the purpose of performing the terms and conditions of such contracts, etc. The only distinction between the position of

the parties who petitioned for the appointment of a receiver, and that of plaintiffs in error here, is that the former had agreed to pay a designated sum for their respective water rights, and had paid a portion thereof, while the latter had not only contracted to buy like water rights for a designated sum, but had actually paid therefor the full purchase price. By the action of the court in the premises the former are protected and their contracts ordered performed, while the rights of the latter are disregarded, their property confiscated, except in so far as they may be willing to buy from the receiver the identical property, at a price greatly in excess of that which they originally paid. In other words, whosoever paid in the beginning of the enterprise, and thus contributed toward placing the project on its feet, are penalized for the benefit of parties who subsequently acquired an interest therein. A result of such character is not an equitable execution—which is the purpose of the appointment of a receiver—and in no sense tends to accomplish complete justice between the parties before the court. But apart from such inequitable feature, we are quite clear that the contracts of plaintiffs in error are not executory in their character, but the objects thereof were fully performed, prior to the appointment of the receiver. The corporations severally sold and received full compensation for perpetual water rights, and delivered the same to the respective purchasers, thus investing the latter with dominion over the things with which the former parted. *Fletcher v. Peck,* 6 Cranch 87, 3 L. Ed. 162; *Roberts v. Beatty,* 2 Pen. & W. 63, 21 Amer. Dec. 410, 415, 6 Rul. Case Law, p. 590.

Each contract in question constituted a bargain and sale which passed the property in the water rights sold. The transaction went further than to only create rights *in personam* to a fulfillment of the terms of the contract. It created rights *in rem* to an enjoyment of such property, and was, therefore, an executed contract. 9 Cyc. p. 244, Par. "C."

The estate granted and the terms thereof are quite definite and explicit, but as the contract provides that a deed for the property shall be executed and delivered at some future time it is contended that it did not operate as a present conveyance. It is frequently a question whether an instrument constitutes a conveyance or is only a contract to convey. However, it is always a question of intention, and if the original instrument contains apt words of present conveyance, and to these are superadded a covenant for conveyance, the latter operates only in the nature of further assurance. We are clearly of the opinion that the contracts under consideration operated as a present conveyance. The holders thereof severally paid for and received that which they had purchased, and have since used and enjoyed the same. In expounding an agreement we must consider the subject-matter, the object of making it, the sense in which the parties naturally understood it at the time it was made, and the purposes and objects to be accomplished thereby. *Wyatt v. Irrigation Co.*, 18 Colo. 298, 33 Pac. 144, 36 Am. St. 280. The contracts were not executory simply because they provided that the respective grantees therein should receive the water during the irrigation season in each year thereafter. The grantees had severally acquired a right of property, the subject of ownership like any other property, and to deprive them of that right would be repugnant to the constitution. The judgment is reversed and the cause remanded.

*Judgment reversed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE BAILEY concur.