### No. C-1272

**Kyle L. Lorenzen v. Mustard's Last Stand, Inc., a Colorado corporation, Terry Goodhart and Harvey Lindenberg**

(586 P.2d 12)

Decided September 11, 1978.

French & Stone, Robert W. Stone, for petitioner.

Clarke & Waggener, P.C., Anthony F. Renzo, for respondents.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

The defendant appealed from the district court's judgment that he breached his leasing agreement with plaintiffs. The Colorado Court of Appeals affirmed. 39 Colo. App. 225, 566 P.2d 1082. We granted certiorari and now reverse.

Plaintiffs operated a hot dog stand in a building leased from the defendant. The lease, which specified a two-year term at $200 per month, contained a provision allowing the plaintiffs to renew the lease for an additional two years, unless the defendant elected to tear down the leased premises within 90 days after the expiration of the lease term. The plaintiffs attempted to renew, but defendnt advised that he was exercising his right to terminate the lease.

The defendant removed one wall, the roof, portions of the remaining three outer walls, all interior walls, plumbing and wiring. After remodeling, which increased the area of the building by 25%, defendant leased it to others as a restaurant at a rental of $400 per month. After the reconstruction, the building was integrated architecturally, although not connected physically, to a four-story office building which defendant erected adjacent to it at the time of the reconstruction.

The plaintiffs sued for damages. At trial, they contended that the building has not been torn down or demolished as the lease required and that, as a result, defendant had breached the lease by refusing to renew it. The district court upheld plaintiffs' claim.

On appeal, defendant contested the ruling that the building had not been demolished or torn down, as well as the measure of damages applied by the trial court. The court of appeals affirmed the trial court on both issues, there being a dissent as to the first issue. Since we reverse as to the first issue, we do not consider whether the trial court employed a correct measure of damages.

The disputed portion of the lease reads as follows:
"The right of renewal herein granted to the Tenants by the Landlord shall be subject to the Landlord's right to refuse to agree to said renewal if the Landlord wishes to *tear down* the leased premises and provided that the *demolition* of said leased premises shall occur within ninety days after the expiration of the lease term." (Emphasis added.)

Before trial, the parties stipulated that the lease was an unambiguous, integrated document. Consequently, no parol evidence was submitted to clarify the the meaning of "tear down" and "demolish." The trial court relied upon dictionary definitions to intepret the terms. The court of appeals approved the use of standard dictionary definitions to ascertain the plain and accepted meanings of contract terms.

Since parol evidence was not introduced, we assume the same posture as the district court in interpreting the terms of the lease. We reach a different result than that of the district court and the majority of the court of appeals because we apply definitions of "demolish" and "tear down" to a different object. The question is whether for all practical purposes the *building* was torn down, not whether every *part* of the building had been demolished.

█ Webster's Third New International Dictionary defines "demolish" to mean to tear down when it is used in reference to a building, and "tear down" to mean take apart or disassemble. The uncontroverted evidence establishes that defendant destroyed the interior of the building and knocked down the walls, one completely and three in part. Gutting the interior and tearing down the walls destroyed the building's structural unity. What remained were portions of three walls, not a building.

█ Only an arbitrary and artifical reading of the lease would support a conclusion that it required the building and its parts to be reduced to rubble. Even when parol evidence is not admitted, a contract should not be interpreted in a vacuum, apart from circumstances which render it intelligible. This court has ruled that, in construing a contract, one must consider

". . . the subject-matter, the object of making it, the sense in which the parties naturally understood it at the time it was made, and the purposes and objects to be accomplished thereby." *Dickson v. Dick,* 59 Colo. 583, 151 P. 441 (1915)

*See also Horton-Cavey Realty Co. v. Spencer,* 37 Colo. App. 96, 544 P.2d 998 (1975). Here we must consider that plaintiffs sought to renew the lease in order to continue operating their restaurant. The wrecking of the structure rendered it completely unsuitable for plaintiffs' purposes, as well as for any other enterprise.

The dissent in the court of appeals relies in part upon three New York cases which interpreted several New York rent statutes. *Friedman v. Ontario Holding Corp.,* 279 App. Div. 23, 107 N.Y.S.2d 610, *aff'd,* 304 N.Y. 625, 107 N.E.2d 97 (1951); *Application of Gioeli,* 221 N.Y.S.2d 568 (1961); and *Noyes v. Rothfeld,* 78 N.Y.S.2d 433 (1947). We think that the cases, which involved circumstances similar to those we consider, state the correct rule of law.

In light of both the definitions cited above and the context of the leasing agreement, under the circumstances here involved, we conclude that

268

defendant did tear down and demolish the building.

Judgment reversed and the cause returned to the court of appeals for remand to the district court with directions to enter judgment for the defendant.