**TOTAL PETROLEUM, INC., Petitioner,**

v.

**Carter M. FARRAR, Sr., and Marjorie J. Farrar, Respondents.**

**No. 88SC401.**

Supreme Court of Colorado,
En Banc.

Feb. 20, 1990.

As Modified on Denial of Rehearing
March 12, 1990.

Bernick & Moch, Richard J. Bernick, Denver, for petitioner.

Hutchinson, Black, Hill & Cook, Clark G. Edwards, and Buchanan, Gray, Purvis & Schuetze, John A. Purvis, Boulder, for respondents.

Justice ROVIRA delivered the Opinion of the Court.

We granted certiorari to consider whether the court of appeals erred in utilizing the "undivided basis" method to resolve a dispute between landlords and a tenant regarding the apportionment of condemnation proceeds, pursuant to a written contract between the parties. *Farrar v. Total Petroleum, Inc.*, 765 P.2d 613 (Colo.App. 1988). The trial court's award of $77,000 to the tenant was reversed by the court of appeals, which held that the tenant was entitled to no compensation because the condemnation proceeds were attributable to the land value of the property taken and not to the improvements on the tenant's portion of the condemned property. We reverse and remand with directions.

## I

The respondents, Carter and Marjorie Farrar (landlords), were fee simple owners of a tract of land containing approximately 88,000 square feet which was condemned by the Boulder Urban Renewal Authority (BURA). The petitioner, Total Petroleum, Inc. (Total), operated a gas station, pursuant to a written lease, on approximately 18,750 square feet of the condemned property. This case involves a dispute between Total and the landlords over the allocation of the condemnation proceeds paid by BURA.[1]

BURA assigned three parcel numbers to the land owned by the landlords. The parcel leased by Total was designated as Parcel 5. Peter Bowes, the appraiser retained by BURA, valued these parcels as follows:

| | |
|---|---|
| Parcel 4 | $242,000.00 |
| Parcel 5 (land) | $188,000.00 |
| Parcel 5 (improvements) | $104,000.00 |
| Parcel 6 | $324,000.00 |
| Total | $858,000.00 |

BURA deposited $858,000 into the registry of the court and an order was entered granting it immediate possession of all three parcels. After the deposit, but before the apportionment hearing, which was to be held pursuant to section 38–1–101, 16A C.R.S. (1982), BURA and the landlords negotiated a price of $1,015,949 for the

---

1. BURA was not a party to the apportionment hearing nor is it a party to this appeal.

condemned parcels.[2] Total was unaware of these negotiations, but did consent to a rule and order which, in pertinent part, provided that:

The amount of total compensation for the property taken, including improvements and appurtenances thereto ... and any and all other claims to which the respondents might be entitled as a result of these proceedings, is $1,015,949.00.

BURA deposited the additional amount of $157,949 and was dismissed from the proceedings. Because the landlords and Total were unable to agree upon an allocation of the condemnation proceeds, an apportionment hearing was held to resolve this issue. The lease involved here contains a legal description of the 18,750 square feet leased by Total, and states that this land comprises the "premises." The lease also provided that:

CONDEMNATION AND EMINENT DOMAIN: If, while this Lease is in force and effect, all of the Premises are ever taken or condemned by right of eminent domain, or if the Landlord makes a voluntary conveyance in lieu of such taking, then this Lease shall, automatically, terminate as of the date on which the taking or condemning agency, body or entity, acquires the right to possession of the Premises. Under those circumstances, the award or price which the taking or condemning agency, body or entity will pay for the Premises shall be divided between the parties as follows:

(a) The Landlord shall receive and retain that part of the award or price which is attributable to the land (only) that is taken.

(b) The Tenant shall receive and retain that part of the award or price which is attributable to the improvements, betterments and all other things situated on the land that is taken.

The trial court reasoned that the resolution of the case depended upon the interpretation of this provision, which it held to

be clear and unambiguous. It also found that the value of Total's improvements to Parcel 5 did not enhance the value of Tracts 4, 5, and 6, taken as a whole. However, the trial court concluded that the parties intended the phrase "attributable to the land" to mean attributable to the "premises," which consisted only of Parcel 5, and held that the improvements enhanced the value of Parcel 5 by $77,000.

The court of appeals agreed with the trial court's conclusion that the lease provision in question was unambiguous. However, it concluded that the parties intended that the value of the improvements be measured in reference to the price paid for the "whole" parcel taken. Accordingly, the court of appeals held that the proceeds were entirely attributable to the value of the land, because Total's improvements to the portion of the condemned property it leased did not enhance the value of the entire 88,000 square foot parcel taken.

II

Colorado follows the undivided basis rule which establishes the method for determining, for condemnation purposes, the fair market value of condemned property. See § 38–1–105(3), 16A C.R.S. (1982). Under this approach, the fair market value of the property is determined without regard to the separate interests to which it may be subject. As such, all the parties with an interest in the property are motivated to maximize the total value of the condemnation award, which will later be apportioned among the parties in interest. This approach furthers important policy considerations because it provides fair compensation for the property condemned, while also expediting the condemnation process by simplifying and narrowing the issues in which the condemnor has an interest. *Montgomery Ward & Co. v. City of Sterling*, 185 Colo. 238, 243, 523 P.2d 465, 468 (1974).

Once the fair market value of the property has been determined, however, the "condemnor steps out of the picture and the interested parties must compete for as

2. This price was calculated as follows:

| | | |
|---|---|---|
| 88,126 sq. ft. $\times$ $11.50 per sq. ft. = | $1,013,449 | |
| Plus appraiser's fee | 2,500 | |
| | $1,015,949 | |

large a share of the available award as they can get. Given the limited nature of the fund, it is obvious that the more any one party gets, the less there is to be distributed among the other claimants." 7A *Nichols on Eminent Domain* § 11.01 at 11–5 (rev. 3d ed.1989). *See also Montgomery Ward & Co. v. City of Sterling,* 185 Colo. 238, 523 P.2d 465 (1974). The allocation of these proceeds, among those parties claiming an interest in the property, may then be determined in subsequent proceedings.[3] The parties claiming such interests may contractually determine how these funds are to be distributed. Resolution of this case is dependent upon construing the lease in question in a manner consistent with well established rules of construction.

In *Lorenzen v. Mustard's Last Stand, Inc.,* 196 Colo. 265, 586 P.2d 12 (1978), a case involving the interpretation of a lease, we noted that:

[A] contract should not be interpreted in a vacuum, apart from circumstances which render it intelligible. This court has ruled that, in construing a contract, one must consider "... the subject matter, the object of making it, the sense in which the parties naturally understood it at the time it was made, and the purposes and objects to be accomplished thereby."

*Id.* at 267, 586 P.2d at 14 (quoting *Dickson v. Dick,* 59 Colo. 583, 151 P. 441 (1915)).

■ In applying these principles, we must interpret the lease provision which provides that Total is to receive the portion of the condemnation proceeds attributable to the improvements situated on "the land that is taken." The landlords argue that this provision refers to the entire 88,000 sq. ft. parcel taken by BURA. They contend that Total's improvements are valueless, because they are inconsistent with the highest and best use of the land, which is commercial redevelopment. Therefore, they conclude that the proceeds were entirely attributable to the value of the land.

Total, however, contends that "the land that is taken" refers to the portion of the "premises" condemned by BURA. The land leased by Total is defined in the lease as the "premises" and comprises the entire area of Parcel 5. Total contends that since the entire "premises" was condemned, it should receive the portion of the proceeds attributable to the value of the improvements to Parcel 5. It argues that the trial court was correct when it concluded that the subject matter of the lease involved only Parcel 5, the "premises," and that the value of the improvements should be determined in relation to this portion of the entire taking. We agree.

The object of the lease provision in question was to provide for an allocation of proceeds in the event the "premises" were condemned. The subject matter of the lease involves only the leased "premises." The ownership which the landlords had of adjacent property was not disclosed in the lease, nor is there any indication that Total was aware of such an interest at the time the lease was entered into. If the value of the improvements were determined with reference to land other than the "premises," then the value of Total's improvements could arbitrarily be affected by factors such as the acquisition or disposition of adjoining property by the landlords, and the condemnor's decision as to the amount of adjacent land to be taken. Only an artificial and strained interpretation of the lease would support such a conclusion.

■ The landlords also argue that their subsequent negotiations with BURA establish that the value of the taking was determined based entirely upon a land valuation of $11.50 per square foot. In *Montgomery,* we noted that "where a lessee has

---

**3.** Section 38–1–105(3), 16A C.R.S. (1982), provides, in pertinent part, that:

> If there is more than one person interested as owner or otherwise in the property and they are unable to agree upon the nature, extent, or value of their respective interests in the total amount of compensation so ascer-

tained and assessed on an undivided basis ... the nature, extent, or value of said interests shall thereupon be determined according to law in a separate and subsequent proceeding and distribution made among the several claimants thereto.

compensable rights in the leasehold, these rights are not affected by the lessor's settlement with the condemnor." *Montgomery Ward & Co. v. City of Sterling*, 185 Colo. 238, 244, 523 P.2d 465, 469 (1974). This principle is especially applicable here, since Total was not a party to those negotiations, nor was it informed as to how the increased award price was determined. Therefore, Total's entitlement to the portion of the proceeds attributable to its improvements to the premises will not be affected by the subsequent negotiations between the landlords and BURA.

Because the court of appeals concluded that the value of Total's improvements should be determined in relation to the value the improvements added to the entire taking, it did not consider the other issues raised by the parties. Accordingly, the judgment of the court of appeals is reversed, and the case is remanded to the court of appeals for consideration of these remaining issues, in a manner not inconsistent with the views expressed herein.

LOHR, J., dissents.

Justice LOHR dissenting:

The majority holds that the tenant, Total Petroleum, Inc. (Total), should receive $77,000 of the proceeds paid in a condemnation proceeding by Boulder Urban Renewal Authority (BURA) for real property designated by BURA as parcels 4, 5 and 6. I respectfully dissent.

This case presents an issue of interpretation of a written lease. Carter M. Farrar, Sr., and Marjorie J. Farrar (landlords) were the owners of real property denominated as parcels 4, 5 and 6, which contained a total of about 88,000 square feet. Total was the lessee of a gasoline service station on parcel 5, which contained approximately 18,750 square feet. The written lease set forth a specific provision for dividing the proceeds of any "award or price" received for the leased premises in condemnation. The provision is quoted in full in the majority opinion, and the agreement for dividing the proceeds specified:

> (a) The Landlord shall receive and retain that part of the award or price which is attributable to the land (only) that is taken.

> (b) The Tenant shall receive and retain that part of the award or price which is attributable to the improvements, betterments and all other things situated on the land that is taken.

*See* 787 P.2d at 166.

Although when parcel 5 was considered in isolation, the improvements contributed to the value, the trial court found that the improvements did not enhance the value of parcels 4, 5 and 6 taken as a whole. The amount paid by BURA for parcels 4, 5 and 6 pursuant to agreement with the landlords was $1,015,440. This was based on an overall land value of $11.50 per square foot. In arriving at this amount, no value was assigned to the improvements on parcel 5. In sum, the improvements did not in fact increase the value of tracts 4, 5 and 6, and the parties assigned no value to the improvements in arriving at the price to be paid.[1] Therefore, no part of the price was "attributable" to the improvements on parcel 5, and under the provisions of the lease, no part of the price was to be paid to Total. This analysis is set forth more fully in the unanimous opinion of a panel of the Colorado Court of Appeals authored by Judge Criswell, *Farrar v. Total Petroleum, Inc.*, 765 P.2d 613 (Colo.App.1988), with which I entirely agree. I would affirm the judgment of the court of appeals.

---

**1.** This is not a situation in which landlords and the condemnor agree to assign values in a manner contrary to the true relative values of the land and the improvements without the agreement of the tenant and then attempt to bind the tenant by the agreed apportionment.