**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**June 22, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

ASCENT CLASSICAL ACADEMIES,

    Plaintiff Counterclaim Defendant - Appellant,

v.

LANDS' END, INC., a/k/a Lands End Direct Merchants, Inc.,

    Defendant - Appellee,

and

ASCENT CLASSICAL ACADEMY CHARTER SCHOOLS, INC.,

    Defendant Counterclaimant - Appellee.

No. 25-1132
(D.C. No. 1:24-CV-00653-GPG-STV)
(D. Colo.)

_____

**ORDER**

_____

Before **BACHARACH** and **MORITZ**, Circuit Judges, and **SHELBY**, District Judge.[**]

_____

Pursuant to Fed. R. App. P. 40, Defendants-Appellees' *Petition for Panel Rehearing* is granted for the limited purpose of the modifications in the attached revised order and judgment. The court's May 7, 2026 order and judgment is withdrawn and

---

[**] The Honorable Robert J. Shelby, U.S. District Judge, District of Utah, sitting by designation.

replaced by the attached revised order and judgment, which shall be filed as of today's date.

Entered for the Court,

Per Curiam

FILED
**United States Court of Appeals**
**Tenth Circuit**

**June 22, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ASCENT CLASSICAL ACADEMIES,

    Plaintiff Counterclaim Defendant - Appellant,

v.

LANDS' END, INC., a/k/a Lands End Direct Merchants, Inc.,

    Defendant - Appellee,

and

ASCENT CLASSICAL ACADEMY CHARTER SCHOOLS, INC.,

    Defendant Counterclaimant - Appellee.

No. 25-1132
(D.C. No. 1:24-CV-00653-GPG-STV)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH** and **MORITZ**, Circuit Judges, and **SHELBY**, District Judge.[**]
_____

Ascent Classical Academies (Ascent) brought trademark infringement claims

against Ascent Classical Academy Charter Schools, Inc. (ACACS) after the parties

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**] The Honorable Robert J. Shelby, U.S. District Judge, District of Utah, sitting by designation.

terminated their business relationship.[1]  The viability of Ascent's trademark infringement claims turns on the meaning of a contract between the parties.

A plaintiff bringing an infringement claim must have a protectable legal interest in the relevant trademark.  *See 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1238 (10th Cir. 2013) (trademark infringement); *see also Utah Lighthouse Ministry v. Found. for Apologetic Info. & Rsch.*, 527 F.3d 1045, 1057 (10th Cir. 2008) (cybersquatting); *Procter & Gamble, Co. v. Haugen*, 317 F.3d 1121, 1128 (10th Cir. 2003) (contributory trademark infringement).  Interpreting the parties' contract to unambiguously permit the allegedly infringing behavior, the district court concluded Ascent lacks a protectable interest in its trademarks asserted against ACACS.

We conclude the relevant contract provision is ambiguous.  Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand for further proceedings.

## I.    Background

Ascent is a nonprofit corporation that manages charter schools.  Ascent alleged it has four trademarks, including "Ascent Classical," "Ascent Classical Academies," and associated logos (collectively, Ascent Marks).

ACACS is a charter school network that operates four charter schools in Colorado: Ascent Classical Academy of Northern Colorado, Ascent Classical

---

[1] Ascent also brought a contributory trademark infringement claim against Lands' End, Inc., who supplied gear to ACACS.  Lands' End is largely irrelevant to the issues on appeal.

Academy of Grand Junction, Ascent Classical Academy of 27J, and Ascent Classical

Academy of Douglas County (collectively, School Names).

Ascent and ACACS entered four essentially identical Management Contracts

in which the parties agreed Ascent would manage each ACACS charter school.  The

fourth paragraph of Section III(R) of the Management Contacts provides:

> ASCENT hereby grants the School the non-exclusive, non-transferable
> license to use ASCENT's trade name and any trademark(s), as they now
> exist or in the future, to promote and advertise the School.  No other use
> of ASCENT trademarks is permitted without ASCENT's prior written
> permission.  The School shall acquire no rights in the ASCENT
> trademarks, and all goodwill of the ASCENT trademarks shall inure to
> the benefit of and remain with ASCENT.  ASCENT shall have pre-
> approval rights for each form and manner of public display of the
> ASCENT Trademarks.  However, the name "Ascent Classical Academy
> of [location identifier]"[2] shall be a trade name of the School, and the
> School shall have the right to use the same after termination of this
> Agreement without additional compensation to ASCENT.

*Joint App'x* at 95–96.[3]  The Contracts are otherwise silent on the scope of ACACS's

post-termination right to use the School Names.

After the parties terminated their business relationship, ACACS continued

using the School Names and permutations of the names.  For example, "Ascent

---

[2] The Management Contracts are identical, except each school's location is inserted here: "Douglas County," "Grand Junction," "Northern Colorado," or "27J."

[3] Hereinafter, this paragraph is referred to as Section III(R) and particular sentences within this paragraph are identified by their sequential order.  For example, "Sentence Five of Section III(R)" refers to the following sentence: "However, the name 'Ascent Classical Academy of Douglas County' shall be a trade name of the School, and the School shall have the right to use the same after termination of this Agreement without additional compensation to ASCENT."

3

Classical Academy Charter Schools," "Ascent Classical Academy," and the Schools' acronyms appeared on ACACS's website, social network profiles, email addresses, uniforms, and marketing materials.

Ascent filed its complaint in the United States District Court for the District of Colorado alleging permutations of the School Names infringe the Ascent Marks. ACACS moved to dismiss. Before the district court, both parties argued the Management Contracts are unambiguous: ACACS argued the Management Contracts granted ACACS ownership of the Ascent Marks, while Ascent argued the contracts granted ACACS merely a license to use the School Names. The district court agreed the Management Contracts were unambiguous but rejected both parties' proffered interpretations. Instead, the district court concluded the Management Contracts unambiguously grant ACACS an unlimited right to use the School Names post-termination, leaving Ascent without a protectable interest in the Ascent Marks to sue for the allegedly infringing behavior. The case was dismissed. Ascent appeals.

## II. Standard of Review

We review de novo the district court's grant of a motion to dismiss for failure to state a claim. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

4

misconduct alleged." *Id.* The court accepts factual allegations as true but not legal conclusions. *Id.*

### III.    Discussion

Ascent argues the district court committed reversible error for two reasons: (1) the court misinterpreted the contract as a matter of law, and (2) the court impermissibly made factual findings. We agree as to the first argument and decline to reach the second.

#### A.  Tenets of Colorado Contract Law

Under governing Colorado contract law, a contract's legal effect is determined by the contract itself and not the allegations in a complaint. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941–42 (10th Cir. 2002); *see also Sch. Dist. No. 1 v. Denv. Classroom Teachers Ass'n*, 433 P.3d 38, 41 (Colo. 2019). Courts enforce unambiguous contracts "based on the plain and generally accepted meaning of the words used." *Denv. Classroom Teachers Ass'n*, 433 P.3d at 41 (citation omitted). The court must examine the written terms to determine the parties' mutual intent. *Id.* "Absent an indication the parties chose to deviate from plain meaning, 'the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words used.'" *Level 3 Commc'ns, LLC v. Liebert Corp.*, 535 F.3d 1146, 1154 (10th Cir. 2008) (quoting *E. Ridge of Fort Collins, LLC v. Larimer & Weld Irrigation Co.*, 109 P.3d 969, 974 (Colo. 2005)). The court should consider common usage, including dictionary definitions, and avoid "strained constructions." *Id.* (quoting *Allstate Ins. Co. v. Huizar*, 52 P.3d 816, 819

(Colo. 2002)). When "construing a contract courts must also 'consider the subject matter, the object of making it, the sense in which the parties naturally understood it at the time it was made, and the purposes and objects to be accomplished thereby.'" *Id.* (quoting *Total Petroleum, Inc. v. Farrar*, 787 P.2d 164, 167 (Colo. 1990)). The court must consider the entire document and may not interpret clauses or phrases in isolation. *U.S. Fid. & Guar. Co. v. Budget Rent-A-Car Sys., Inc.*, 842 P.2d 208, 213 (Colo. 1992).

A contract that is susceptible to more than one reasonable interpretation is ambiguous. *Level 3 Commc'ns*, 535 F.3d at 1155. Determining whether a contract is ambiguous is a question of law. *Denv. Classroom Teachers Ass'n*, 433 P.3d at 41. "When an ambiguity is found to exist and cannot be resolved by reference to other contractual provisions, extrinsic evidence must be considered by the trial court in order to determine the mutual intent of the parties at the time of contracting." *McAuliffe v. Vail Corp.*, 69 F.4th 1130, 1144 (10th Cir. 2023) (quoting *Pepcol Mfg. Co. v. Denv. Union Corp.*, 687 P.2d 1310, 1314 (Colo. 1984)). The meaning of an ambiguous contract may not be resolved at the motion to dismiss stage. *Id.* at 1143.

**B. The Management Contracts Are Ambiguous as to the Scope of ACACS's Right to Use the School Names After Termination.**

We conclude the Management Contracts are ambiguous. The most relevant provision is Sentence Five of Section III(R), which states, "[T]he name 'Ascent Classical Academy of [location identifier]' shall be a trade name of the School, and

6

the School shall have the right to use the same after termination of this Agreement without additional compensation to ASCENT." *Joint App'x* at 96.

The Management Contracts do not further define the scope of ACACS's post-termination right to use the School Names.  Indeed, the remainder of each Contract is silent on the issue, including the sections addressing termination and each party's rights post-termination.  For example, Section VIII(B)(2) provides that each party is entitled to keep its own assets post-termination, and Section III(Q) provides each school's property includes its financial records, education records, and student records.  *Id.* at 94, 102–03.  Both sections are silent as to handling property that is branded with permutations of the School Names.  Accordingly, we focus on the plain language of Section III(R) to discern the scope of ACACS's post-termination rights.

The parties agree that Section III(R) grants ACACS some post-termination right to use the School Names but dispute the scope.  ACACS argues the Management Contracts grant the right to use the School Names and permutations thereof.  Ascent argues the Contracts grant the limited right to use only the precise full names of each school as recited in Sentence Five.  We find both interpretations reasonable, such that the contract cannot be interpreted as a matter of law at the motion to dismiss stage.

### 1.  ACACS's Interpretation Is Reasonable.

ACACS adopts on appeal the district court's interpretation of the Contracts. The district court concluded the Management Contracts grant ACACS the right to use permutations of the School Names post-termination.  Its decision is sound and

7

persuasive. Sentence One of Section III(R) grants ACACS a broad license to use Ascent's trade name and trademarks, including the Ascent Marks. The only restriction to this license is the use limitation: the trade name and trademarks must be used "to promote and advertise the School." *Id.* at 95. Sentences Two and Three clarify the use limitation and confirm that Sentence One grants only a license to use. *Id.* Sentence Four then grants Ascent a contractual right to preapprove any public display of the trademarks. *Id.* at 96.

Sentence Five follows these provisions and states: "However, the name 'Ascent Classical Academy of [location identifier]' shall be a trade name of the School, and the School shall have the right to use the same after termination of this Agreement without additional compensation to ASCENT." *Id.* This provision begins with "however," which means "in spite of that" and "on the other hand." *However*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/however [https://perma.cc/3AKV-E935]. Sentence Five thus stands in contrast to the preceding four sentences in Section III(R). Sentence Five then identifies the School Name as a trade name of the School and grants ACACS the right to continue using its name post-termination regardless of its relationship with Ascent. Unlike the use limitation in Sentence One, Sentence Five includes no limitation on ACACS's right to use the School Name post-termination. As the district court explained, Sentence Five grants ACACS the "unlimited right to use the identified name. The intention of [Sentence Five] is clear—regardless of any intellectual property owned by Ascent discussed previously, it gives 'the School' assurance of the right to use its name

8

regardless of whether or not it continues its relationship with Ascent." *Joint App'x* at 209. The right is irrevocable because, as the Management Contracts state, it continues even "after termination of this Agreement." *Id*. at 96. We conclude this interpretation is reasonable.

Under ACACS's interpretation, ACACS has a contractual right to use the School Names and permutations thereof post-termination. Because the Contracts permit ACACS's use of the Ascent Marks, Ascent does not have a protectable interest in the Ascent Marks for the alleged behavior. Accordingly, Ascent fails to state a viable claim for relief under this interpretation of the Contracts.

### 2. Ascent's Interpretation Is Also Reasonable.

Ascent argues Section III(R) grants ACACS the limited post-termination right only to use the School Names in their entirety, without alterations or permutations. This is also a reasonable interpretation.

Sentence Three states, "The School shall acquire no rights in the ASCENT [Marks]." *Id.* at 95. Sentence Five then provides a limited exception for the post-termination right to use the School Names: "However, the name 'Ascent Classical Academy of [location identifier]' shall be a trade name of the School and the School shall have the right to use the same after termination of this Agreement without additional compensation to ASCENT." *Id.* at 96.

The relevant statute defines a trade name as "any name used by a person to identify his or her business or vocation." 15 U.S.C. § 1127; *see also Standard Oil Co. v. Standard Oil Co.*, 252 F.2d 65, 71 n.9 (10th Cir. 1958) ("Generally speaking, a

9

trade-mark is applicable to the vendible commodity to which it is affixed, and a trade name to a business and its good-will." (citation modified)).  Since the Contracts identify the School Names as trade names, Section III(R) permits using the School Names post-termination to identify each specific school.

Quotation marks set the School Name apart from the rest of Sentence Five. Quotation marks are "used chiefly to indicate the beginning and the end of a quotation in which the exact phraseology of another or of a text is directly cited." *Quotation Marks*, Merriam Webster's Dictionary, https://www.merriam-webster.com/dictionary/quotation%20marks [https://perma.cc/CHS2-DCM3].  The quotation marks show the parties intended the School Name to be treated as a distinct unit.  Sentence Five merely recognizes that each distinct School Name may be used as a trade name without infringing the Ascent Marks; it does not convey any further rights.  The Management Contracts do not otherwise include a provision permitting permutations or alterations of the School Name units.  We conclude this interpretation is also reasonable.

Under Ascent's interpretation of the Management Contracts, ACACS's post-termination right is limited to using the School Names unaltered.  The Complaint alleges ACACS has exceeded its contractual right by using permutations of the School Names.  Because the Contracts do not permit the alleged behavior, Ascent has a protectable interest in the Ascent Marks.  Accordingly, Ascent states viable trademark claims under this interpretation of the Contracts.

* * *

10

Because Section III(R) is susceptible to more than one reasonable interpretation, we conclude the Management Contracts are ambiguous and their meaning cannot be resolved at the motion to dismiss stage.

We reverse the dismissal of Ascent's Complaint and remand to the district court for further proceedings.

Entered for the Court


Robert J. Shelby
District Court Judge

11