HENRY M. TIEDEMANN ET AL. *v.* NATIONWIDE MUTUAL FIRE INSURANCE COMPANY ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued January 2—decided March 7, 1973

*William B. Rush,* with whom was *Dion W. Moore,* for the appellants (defendants).

*Richard P. Gilardi,* for the appellees (plaintiffs).

SHAPIRO, J.   The plaintiffs, Henry and Gertrude Tiedemann, brought this suit in the Court of Common Pleas against the defendants, Nationwide Mutual Fire Insurance Company, Nationwide Mutual Insurance Company, hereinafter referred to as Nationwide, and Nationwide General Insurance Company, seeking to recover the amount of a judgment rendered in favor of the plaintiffs against a construction company to which one or more of the defendants had previously issued a policy of insurance.   The case was submitted under a stipulation of facts, and the trial court held that the construction company's liability for the loss sustained by the plaintiffs was covered by a policy of insurance issued by the defendant Nationwide and that Nationwide was therefore liable to the plaintiffs for the amount of the judgment obtained by them against the construction company.  From the judgment rendered, the defendants have appealed.

The parties stipulated to and the court found the following facts:   On April 25, 1961, Nationwide issued a policy of insurance entitled "Manufacturers' and Contractors' Liability Policy" to the McGlynn Construction Company, hereinafter re-

ferred to as McGlynn. The policy originally stated a policy period running to April 25, 1962, but on December 14, 1961, Nationwide mailed a prepaid written notice of cancellation and a cancellation letter to McGlynn. The cancellation was effective as of December 29, 1961, and was in accordance with the relevant provisions of the policy as follows: "This policy may be cancelled by the Company by mailing to the Named Insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date and hour of cancellation stated in the notice shall become the end of the policy period." The remaining pertinent provisions of the policy are recited in the footnote.[1]

On or about April 27, 1961, the plaintiffs entered into a contract with McGlynn for certain construction work in building a house on property owned by them. The construction work, which was completed during the year 1961, included the chimney, the fire-

---

[1] "MANUFACTURERS' AND CONTRACTORS' LIABILITY POLICY

. . . . .

INSURING AGREEMENTS

I COVERAGES

Coverage B—Property Damage Liability
To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined.

place and the foundation thereof which had been built by McGlynn's subcontractor, the Westfair Masonry Company.

On or about April 17, 1963, the plaintiffs instituted a lawsuit against McGlynn and the Westfair Masonry Company. The complaint alleged that a fire occurred in the fireplace on March 4, 1962, causing damage to the Tiedemann home, and that the damage was proximately caused by the negligence of McGlynn. Specifically, the complaint stated that McGlynn failed to inspect the work of its subcontractor during construction and failed to discover that the fireplace and the foundation were built with inferior material and constructed in a substandard manner. Before serving the complaint, the plaintiffs' attorneys had determined that Attorney E. Arthur Morin, Jr., was the agent for service of

Definition of Hazards

Division 1—Premises—Operations

The ownership, maintenance or use of premises, and all operations.

.     .     .     .     .

II DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS
With respect to such insurance as is afforded by this policy . . . for property damage liability, the company shall: (a) defend any suit against the Insured alleging such injury . . . or destruction and seeking damage on account thereof, even if such is groundless, false or fraudulent . . . .

VI POLICY PERIOD, TERRITORY

.     .     .     .     .

This policy applies only to accidents which occur during the policy period . . . ."

process for McGlynn. In June of 1963, Morin advised the plaintiffs' attorneys that he had represented McGlynn prior to its dissolution, that the principals of the corporation were no longer residents of the United States, and that he was attempting to locate the insurance policies which were in effect at the time of the construction of the Tiedemann residence by McGlynn. Morin also requested that no action be taken on the complaint in order that he might advise the insurance company. On December 13, 1963, Nationwide received its first notice in a letter from Morin that a claim had been made and a suit brought against McGlynn. On January 3, 1964, Nationwide notified McGlynn and Morin that it would refuse to provide a defense to McGlynn. Nationwide did not file an appearance in the suit which the plaintiffs had instituted against McGlynn, and, on February 24, 1964, a default judgment was rendered against McGlynn and the Westfair Masonry Company. A hearing in damages was held and a judgment rendered against McGlynn and the Westfair Masonry Company in the amount of $2575.18.

From these stipulated facts, the court concluded that Nationwide had a duty to defend the cause of action which the plaintiffs had brought against McGlynn and that the allegations of negligence in the second count of the complaint against McGlynn were covered under the terms of the policy in question. The court further concluded that Nationwide had breached its contract to defend and that, as a result of this breach, Nationwide was liable to pay the amount of the judgment obtained against its insured up to the limited liability fixed by the policy.

Nationwide attacks these conclusions on the ground that the facts as stipulated by the parties do

not support them, that the policy was effectively cancelled and provided no coverage for the accident, and that McGlynn's failure to notify Nationwide of the accident discharged Nationwide of its obligations under the policy. The question dispositive of this appeal, however, is whether the adjudged liability of McGlynn for the loss sustained by the plaintiffs was covered by the insurance contract between McGlynn and Nationwide. If so, the plaintiffs are subrogated to all rights of McGlynn and have a right of action against the insurer, Nationwide, "to the same extent that the defendant [McGlynn] . . . could have enforced . . . [its] claim against such insurer had such defendant paid such judgment." General Statutes § 38-175;[2] *Commercial Contractors Corporation* v. *American Ins. Co.,* 152 Conn. 31, 40, 202 A.2d 498.

Part VI of the policy of insurance, set out in footnote 1, is an exclusionary clause which specifically limits protection only to accidents occurring within the policy period. As the parties agreed, the policy period terminated on December 29, 1961. Thus, if the plaintiffs, in their original suit against McGlynn, stated a claim which is for an injury "covered" by the policy, there would be no question of Nationwide's duty to defend the action. See *Keithan* v. *Massachusetts Bonding & Ins. Co.,* 159 Conn. 128, 138–39, 267 A.2d 660; *Schurgast* v. *Schumann,* 156 Conn. 471, 490, 242 A.2d 695; *Missionaries of the Company of Mary, Inc.* v. *Aetna Casualty & Surety Co.,* 155 Conn. 104, 113, 230 A.2d 21; *Lee* v. *Aetna Casualty & Surety Co.,* 178 F.2d 750, 751 (2d Cir.).

[2] Although neither the parties nor the court mentioned the statute pursuant to which this suit was brought, it is evident from the cases relied on by the parties that General Statutes § 38-175 was the basis for the action.

The basis of the plaintiffs' claim against McGlynn is a fire which occurred on March 4, 1962, over two months after the policy period had expired. Even assuming the truth of the allegations made by the plaintiffs in their suit against McGlynn, we cannot agree that the accident causing the loss complained of was covered under the policy of insurance between Nationwide and McGlynn.

The plaintiffs, with whom the trial court agreed, contend that their claim against McGlynn involved "negligent activity" of the insured which occurred during the policy period. To circumvent the provisions of the exclusionary clause in Part VI, however, they would have the court interpret the word "accident" to encompass both the cause and effect of the fire which occurred on March 4, 1962. This interpretation is unacceptable. As we stated in *Commercial Contractors Corporation* v. *American Ins. Co.*, supra, the term "accident" is to be construed in its ordinary meaning of an unexpected happening. "The 'accident' was the event causing injury, not the cause of that event." Id., 42. "The meaning of the exclusionary clause in the instant policy is clear and unambiguous, a fact which is not altered merely because the parties contend for different interpretations." *LaBonte* v. *Federal Mutual Ins. Co.*, 159 Conn. 252, 257, 268 A.2d 663.

Granting that the alleged "negligent activity" of McGlynn during the period of construction of the Tiedemann residence may have occurred within the period of insurance coverage, the plaintiffs' claim against Nationwide does not survive the exclusionary clause of Part VI. There is no evidence that McGlynn received insurance protection for accidents occurring after its operations had been completed. In fact, the policy, under the heading of "Exclu-

sions," specifically stated that it "does not apply . . . under Division 1 of the Definition of Hazards to . . . the Products—Completed Operations Hazard."[3] Obviously, the plaintiffs can claim no greater rights against Nationwide than could the insured, McGlynn, and have no action against Nationwide for a liability of McGlynn which was not insured.

We conclude, therefore, that the claim on which the plaintiffs recovered a judgment against McGlynn was not one for which McGlynn had contracted insurance coverage with Nationwide, and that Nationwide stands absolved of any duty to answer the adjudged liability of McGlynn since it had no duty to defend the action against McGlynn.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendants.

In this opinion the other judges concurred.

---

[3] The "Completed Operations" hazard is defined in the policy as providing coverage "if the accident occurs after possession . . . has been relinquished to others by the Named Insured."