PLASTICRETE CORPORATION *v.* AMERICAN POLICYHOLDERS INSURANCE COMPANY

BOGDANSKI, PETERS, HEALEY, ARMENTANO and WRIGHT, Js.

Argued January 8—decision released May 19, 1981

*Paul V. McNamara,* for the appellant (defendant).

*Joseph H. Pellegrino,* with whom, on the brief, was *Deborah L. Daddio,* for the appellee (plaintiff).

PETERS, J.   This is a dispute arising out of an insurance policy providing comprehensive coverage against general and contractual liability.   The plaintiff, Plasticrete Corporation, brought an action claiming that the defendant, American Policyholders Insurance Company, had, in violation of its contractual obligation under the policy, refused to defend the plaintiff in a lawsuit brought against the plaintiff by a customer in New York City.   This action sought damages and a declaratory judgment to determine the applicability of the insurance policy.   The defendant's answer denied liability and raised two special defenses, the insured's failure to give timely notice and its failure to cooperate. After a full hearing, the state referee, acting as the trial court, found the issues for the plaintiff.   From the judgment thereafter rendered, the defendant has appealed.

The underlying facts that appear in the trial court's finding are undisputed.   The plaintiff Plasticrete is a corporation that manufactures masonry building materials, including masonry blocks.   In 1971, Plasticrete entered into a contract with LaSala Masonry Corporation to provide masonry blocks for the construction of the outside walls of a building in New York City known as Tracey Towers for which Leon D. DeMateis & Sons, Inc. was the general contractor.   The general contract called for a cavity wall construction, in effect a double wall composed of an outer wall built with Plasticrete blocks, a cavity, and then an inner wall for which Plasticrete did not supply the materials.

Such a wall design is intended to allow water that penetrates the outer wall to be carried away from the building through "weep holes." Plasticrete's sole responsibility under its contract was to supply masonry blocks manufactured in accordance with architectural specifications. It had no responsibility whatsoever for the inner wall; even for the outer wall it was only the supplier and not the installer of the masonry blocks.

During the time when this contract was being performed, the defendant American Policyholders Insurance Company (American Policyholders) insured Plasticrete against comprehensive general liability and contractual liability. The policy obligated American Policyholders to defend Plasticrete in any litigation in connection with property damage. The policy defined the occurrences for which insurance coverage was provided, imposed upon Plasticrete duties of notice and cooperation, and expressly made compliance with each of the terms of the policy a condition of American's obligations.

Plasticrete delivered masonry blocks to the worksite from 1971 to 1973. In June, 1973, after deliveries had been completed, the general contractor, DeMateis, notified Plasticrete that the exterior wall was leaking and that he was considering waterproofing at an estimated cost of $400,000. A subsequent letter, on July 5, 1973, sought a response from Plasticrete and contained a revised estimate of the cost of waterproofing in the amount of $900,000. Plasticrete replied on July 12, 1973, denying responsibility and attributing the problem to improper workmanship by the installer. This explanation was rejected by the general contractor, who subsequently informed Plasticrete, on November 27,

1973, that he was proceeding with the waterproofing. On May 9, 1974, after a number of further intermediate communications, Plasticrete's president met with the general contractor and the masonry subcontractor. Plasticrete continued to maintain that the porosity of its masonry blocks was not a breach of warranty but instead conformed to the specifications of the architect. Nonetheless, in order to resolve the problem, Plasticrete offered to pay a quarter of the costs of rectifying it. To Plasticrete, this contract was important because it was a large one and in a new market in which it wanted to compete. Nothing was resolved at the May meeting, and there was no further contact with the general contractor until June, 1975, when litigation was instituted against Plasticrete in New York. Plasticrete then promptly notified American Policyholders. The insurer, however, denied its liability in the event of a judgment against Plasticrete and refused to defend Plasticrete in the New York litigation because, it said, Plasticrete was in breach of its obligations, under the policy, to notify the insurer promptly of an occurrence and to cooperate in the defense against a claim. This action by Plasticrete against its insurer ensued.

At the trial, one of American Policyholder's defenses was that Plasticrete had failed to comply with its duty, under the policy, to give the defendant timely notice. The policy provides: "In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as

soon as practicable."[1]  Compliance with this term
of the policy is expressly made a condition prece-
dent to the liability of the insurer.  The term "occur-
rence" is defined in the policy to mean "an accident,
including continuous repeated exposure to condi-
tions which result in bodily injury or property dam-
age, neither expected nor intended from the stand-
point of the insured."[2]  The insurer's obligation to
pay is limited to damages "caused by an occur-
rence."[3]

The trial court noted that these provisions were
difficult to apply to a claim for damages that arose
out of an event that was, as everyone conceded, not
an accident.  It ultimately found that there had not
been an occurrence within the definition of the
policy.  Nevertheless the court found that Plasti-
crete had given timely notice after it had received
service of the New York lawsuit and that this notice
was sufficient under the insurance policy to entitle
Plasticrete to defense and indemnification.  Alter-
natively, the court also determined that American
Policyholders had not proven that it had been prej-
udiced because of the claimed failure of Plasticrete
to comply with its obligation to give timely notice.

These conclusions are, at least in part, irrecon-
cilable.  There is no basis for imposing liability
upon American Policyholders if there has been no
occurrence within the language of the policy. With-
out an "occurrence" there is, under the policy, no
coverage for either bodily injury or property dam-
age.  It is axiomatic that no insurer is bound to pro-
vide indemnification or defense beyond the scope of

---

[1] "Conditions . . . 4. Insured's Duties in the Event of an Occur-
rence, Claim or Suit:  (a)."

[2] "Definitions . . . 'occurrence.' "

[3] "Coverage Z — Contractual Property Damage Liability."

the coverage described in the insurance contract, the policy. *London & Lancashire Indemnity Co.* v. *Duryea,* 143 Conn. 53, 58, 119 A.2d 325 (1955); and see *Smedley Co.* v. *Employers Mutual Liability Ins. Co. of Wisconsin,* 143 Conn. 510, 513, 123 A.2d 755 (1956). To the extent that the policy's definition of "occurrence" is ambiguous, its scope may be interpreted to encompass the meaning reasonably attached to that definition by the insured, rather than by the insurer.[4] *Simses* v. *North American Co. for Life & Health Ins.,* 175 Conn. 77, 84–85, 394 A.2d 710 (1978); *Roby* v. *Connecticut General Life Ins. Co.,* 166 Conn. 395, 402, 349 A.2d 838 (1974); *Raffel* v. *Travelers Indemnity Co.,* 141 Conn. 389, 392, 106 A.2d 716 (1954); see also 4 Williston, Contracts (3d Ed. 1961) § 621. But the total absence of coverage is fatal to recovery by the insured. The absence of an occurrence, instead of postponing the time when notice must be given, means that nothing has happened about which notice must ever be given because the insurer will never be obligated to defend. We cannot ignore the finding that there was no occurrence, which Plasticrete has not attacked. We therefore cannot sustain the judgment against American Policyholders.

The court made other findings which indicate that there was evidence that would have supported the conclusion that there was, in fact, an occurrence as defined by the policy. Whether there was property damage "neither expected nor intended from the standpoint of the insured" with regard to the out-

---

[4] The definition of an occurrence which gives rise to the insurer's duty to defend the insured in a suit for damages must, logically, be broader than that of an occurrence which gives rise to the duty to indemnify the insured. *Smedley Co.* v. *Employers Mutual Liability Ins. Co. of Wisconsin,* 143 Conn. 510, 516, 123 A.2d 755 (1956). See footnote 7, infra.

side wall was clearly established to have been one of the points at issue between the underlying parties (the parties to the New York lawsuit). Plasticrete consistently took the position that porosity was a built-in consequence of the architect's design and specifications, while the general contractor deemed the porosity excessive. In addition, there was also controversy about the effect of this construction on the inside cavity wall, and as to this interior wall, the trial court expressly found that water seepage was a condition that was neither expected nor intended. It is therefore proper to remand this case for a new trial to determine if there was an occurrence under the policy.

Upon retrial, the trial court must determine not only *whether* there was an occurrence but also *when* there was an occurrence. The latter is likely to be the more difficult question. Insurance coverage defined to encompass "continuous repeated exposure to conditions which result in . . . property damage" appears to contemplate a developing condition that may be difficult to locate in a specific time frame. Yet the duty to give notice "as soon as practicable" must be triggered by an identifiable event.[5] In that regard, the trial court must determine further whether notification to the insured that there is a problem is itself an occurrence, when the insured believes in good faith that the problem is one for which it bears no legal responsibility. In the circumstances of this case, questions relating to occurrence and the duty to give timely notice are

---

[5] We note that the duty to give written notice is premised, by the terms of § 4 (a) of the insurance policy, upon "the *event* of an occurrence," not upon a *claim* that there has been an occurrence. Yet a reasonable reading of this clause must delay the rise of the duty until the insured has or reasonably should have knowledge of the event. Often this will come only with a claim.

inevitably entwined. Possibly spillover obligations arising out of the duty to cooperate with the insurer create a supplemental duty to notify the insurer of claims as they emerge, but that issue, too, requires further inquiry.

The commercial dilemma that the trial court must resolve arises out of the inherent conflict between a merchant's interest in keeping his customers contented, particularly where the merchant is venturing into a new market, and an insurer's interest in early warning signals about potential claims. From the point of view of the merchant, it is reasonable to contemplate considerable accommodation with respect to any one contract in order to reap the gains of future contractual relationships. The insurance policy recognizes this, in part, in the provision permitting "the insured . . . at his own cost, voluntarily [to] make any payment."[6] From the point of view of the insurer, however, discussions looking to accommodation complicate the insurer's responsibility to defend the merchant at a later date, if the settlement efforts do not succeed. No matter how assiduously the merchant attempts and intends to separate discussions about settlement from concession of breach, the insurer has a justifiable concern that, in defending a subsequent lawsuit, it will be confronted with statements by the merchant that may be characterized as admissions against interest. Under the policy, the insured is obligated "to defend any suit against the insured seeking damages . . . even if any of the allegations of the suit are groundless, false or fraudulent . . . ."[7]

---

[6] "Conditions . . . 4. Insured's Duties in the Event of Occurrence, Claim or Suit: . . . (c)."

[7] "Coverage Z — Contractual Property Damage Liability."

Thus the policy contemplates at least some obligations to defend which will, because the suits are entirely groundless, false or fraudu-

The trial court, on remand, must reconcile the provisions of the insurance policy with these competing legitimate interests of the insurer and the insured. It must determine whether and when an insured event, an "occurrence," took place. If it finds that an "occurrence" took place, it must then decide whether, in light of that determination, Plasticrete complied with the other conditions of the policy.

There is error, the judgment is set aside and the case is remanded for a new trial in accordance with this opinion.

In this opinion HEALEY and WRIGHT, Js., concurred.

BOGDANSKI, J. (dissenting). The parties are in agreement that an accident did not take place. The question is whether there was a "continuous or repeated exposure to conditions which resulted in . . . property damage neither expected nor intended from the standpoint of the insured." The leakage of water through the Plasticrete outer wall was continuous and repeated. Although the plaintiff states that it contemplated that water would enter into the cavity between the outer and inner wall, it did not expect or intend any resulting property damage to the interior of the buildings. The conclusion is inescapable that this continuous water damage was an "occurrence" and that the trial court's conclusion that there was no "occurrence" is unsupported by the subordinate facts found and

lent, arise without any independent "event" or "occurrence" of which the insured can notify the insurer; as to these, at least, notice must be timely if given when the insured receives notice of the claim, or is sued.

cannot stand.[1]  Conclusions are tested by the finding. *Hutensky* v. *Avon,* 163 Conn. 433, 437, 311 A.2d 92 (1972); *Cecio Bros., Inc.* v. *Feldmann,* 161 Conn. 265, 271, 287 A. 2d 374 (1971); *Johnston Jewels, Ltd.* v. *Leonard,* 156 Conn. 75, 78–79, 239 A.2d 500 (1968); *Brockett* v. *Jensen,* 154 Conn. 328, 331, 225 A.2d 190 (1966).  A conclusion cannot stand if it is legally or logically inconsistent with the facts found.  *Hutensky* v. *Avon,* supra; *Schnier* v. *Ives,* 162 Conn. 171, 177, 293 A.2d 1 (1972); *Craig* v. *Dunleavy,* 154 Conn. 100, 105, 221 A.2d 855 (1966); *Yale University* v. *Benneson,* 147 Conn. 254, 255, 159 A.2d 169 (1960).  The trial court made a finding that, "[t]he water seepage through the Plasticrete block into the interior of the building was a condition that was neither expected nor intended from the standpoint of the insured because of the cavity wall construction."  "A finding is to be read to uphold the judgment.  Every reasonable presumption will be indulged in to support it.  It is read so as to be consistent and implications seemingly inconsistent with the main facts are to be brought into harmony with them."  Maltbie, Conn. App. Proc. § 135; see *Horton* v. *Meskill,* 172 Conn. 615, 639, 376 A.2d 359 (1977).  Although the plaintiff has not attacked the court's conclusion that there was no occurrence, this court has the discretion to consider issues which were not briefed.  See *Wendland* v. *Ridgefield Construction Services, Inc.,* 184 Conn. 173, 439 A.2d 954 (1981); *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.,* 183 Conn. 266, 439 A.2d 314 (1981).

The next question arises:  at what point must the insured provide notice of the occurrence to the defendant?  *Silver* v. *Indemnity Ins. Co.,* 137 Conn.

---

[1] The finding was filed February 20, 1979.

525, 528, 79 A.2d 355 (1951), holds that the words "as soon as practicable" mean " 'as soon as can reasonably be expected under the circumstances. . . . The duty to give notice does not arise unless and until facts develop which would suggest to a person of ordinary and reasonable prudence that liability may have been incurred, and is complied with if notice is given within a reasonable time after the situation so assumes an aspect suggestive of a possible claim for damages.' "

The subordinate facts reveal that the plaintiff conducted negotiations in 1974 and made an offer of settlement. It was at this point that the plaintiff should have known that liability might have been incurred. The discussions with the general contractor had gone beyond the stages of a routine customer complaint. The large amount of money involved, and the plaintiff's status as a corporation, in business for fifty years, are further reasons why the plaintiff should have known of a possible lawsuit and should have given notice of the occurrence.

The trial court determined that the defendant must show prejudice to itself from the late notice in order to be relieved of its responsibility under the policy. The question of whether prejudice must be shown has been the subject of much controversy in recent years.[2]

A forfeiture of insurance coverage because of a delay in giving notice when there is no harm to the carrier is an unnecessarily harsh result. Many jurisdictions hold that prejudice can be

[2] See generally comment, "The Materiality of Prejudice to the Insurer as a Result of the Insured's Failure to Give Timely Notice," 74 Dick. L. Rev. 260 (1970); 8 Appleman, Insurance Law & Practice § 4732 (1962); 13 Couch, Insurance (2d Ed. 1965) § 49.88; 44 Am. Jur. 2d, Insurance § 1463; annot., 18 A.L.R.2d 443.

considered by the trier of fact. See, e.g., *Joyce v. United Ins. Co.,* 202 Cal. App. 2d 654, 21 Cal. Rptr. 361 (1962); *Falcon Steel Co.* v. *Maryland Casualty Co.,* 366 A.2d 512 (Del. Super. 1976); *O'Neal* v. *Southern Farm Bureau Ins. Co.,* 325 So. 2d 887 (La. App. 1976); *Lumbermens Mutual Casualty Co.* v. *Oliver,* 115 N.H. 141, 335 A.2d 666 (1975); *Cooper* v. *Government Employees Ins. Co.,* 51 N.J. 86, 237 A.2d 870 (1968); *Brakeman* v. *Potomac Ins. Co.,* 472 Pa. 66, 371 A.2d 193 (1977); *Spangler* v. *Ins. Co. of North America,* 17 Wash. App. 121, 562 P.2d 635 (1977).

As the court in *Brakeman* stated: "The rationale underlying the strict contractual approach . . . is that courts should not presume to interfere with the freedom of private contracts and redraft insurance policy provisions where the intent of the parties is expressed by clear and unambiguous language. We are of the opinion, however, that this argument, based on the view that insurance policies are private contracts in the traditional sense, is no longer persuasive. Such a position fails to recognize the true nature of the relationship between insurance companies and their insureds. An insurance contract is not a negotiated agreement; rather its conditions are by and large dictated by the insurance company to the insured. . . . A strict contractual approach is also inappropriate here because what we are concerned with is a forfeiture. The insurance company in the instant case accepted the premiums paid by the insured for insurance coverage and now seeks to deny that coverage on the ground of late notice. . . .

"We are reluctant, therefore, to allow an insurance company to refuse to provide that which it was

paid for unless a sound reason exists for doing so. The purpose of a policy provision requiring notice of an accident or loss to be given within a certain time is to give the insurer an opportunity to acquire, through an adequate investigation, full information about the circumstances of the case, on the basis of which, it can proceed to disposition, either through settlement or defense of the claim. . . . Where the insurance company's interests have not been harmed by a late notice, even in the absence of extenuating circumstances to excuse the tardiness, the reason behind the notice condition in the policy is lacking, and it follows neither logic nor fairness to relieve the insurance company of its obligations under the policy in such a situation." *Brakeman* v. *Potomac Ins. Co.*, supra, 72–75.

The rule that prejudice to the insurer is immaterial is based on the theory that breach of the notice requirement raises a conclusive presumption that the insurer is prejudiced, regardless of whether the insurer is in fact prejudiced. 8 Appleman, Insurance Law & Practice § 4732 (1962). There is no sound reason, in logic or equity, why the insurer should have the benefit of a conclusive presumption. Such an artificial rule has no basis in reality. A mere showing of late notice should not automatically relieve the insurer of its obligations under the policy.[3]

The trial court correctly placed the burden of persuasion of showing prejudice on the insurance company. This is consistent with the clear trend of the law. E.g., *State Farm Mutual Ins. Co.* v. *Murnion*, 439 F.2d 945 (9th Cir. 1971); *Powell* v. *Home*

---

[3] This rationale becomes even more forceful when applied to the field of automobile liability insurance, since the state has an interest in protecting parties injured in motor vehicle accidents.

*Indemnity Co.,* 343 F.2d 856 (8th Cir. 1965) ; *Young* v. *Travelers Ins. Co.,* 119 F.2d 877 (5th Cir. 1941) ; *Lindus* v. *Northern Ins. Co. of New York,* 103 Ariz. 160, 438 P.2d 311 (1968) ; *State Farm Mutual Automobile Ins. Co.* v. *Johnson,* 320 A.2d 345 (Del. 1974) ; *Cooper* v. *Government Employees Ins. Co.,* 51 N.J. 86, 237 A.2d 870 (1968) ; *Brakeman* v. *Potomac Ins. Co.,* supra; comment, "The Materiality of Prejudice to the Insurer as a Result of the Insured's Failure to Give Timely Notice," 74 Dick. L. Rev. 260 (1970).

Undeniably, it would be difficult for the policyholder to prove a lack of prejudice to the insurer. Normally, the burden is on the party having the affirmative, since a party is generally not required to disprove a negative. Tait & LaPlante, Handbook of Connecticut Evidence § 4.2. Burdens are allocated on considerations of fairness and convenience. Id. Since the insurer chooses to disclaim liability, it is proper to place the burden of persuasion on it.

The trial judge found that the defendant had not sustained its burden of showing prejudice. The court expressly found that the defendant produced no witnesses at the time of trial, nor was there any testimony of any kind as to how and why the defendant would be prejudiced in defending the lawsuit brought against the plaintiff because it had not been given timely notice of the difficulties with the general contractor.

The defendant next contends that the plaintiff breached its duty to cooperate[4] by communicating

[4] The duty to cooperate provision in the policy provided: "4. INSURED'S DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT:

"(a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtain-

with DeMatteis both orally and in writing on several occasions prior to the institution of the suit. I agree with the trial court that this conduct by the plaintiff does not show a breach of the duty to cooperate. A reading of paragraph 4 of the policy indicates that the duty to cooperate does not arise until the insurer is notified of an occurrence, claim, or suit. *Arton* v. *Liberty Mutual Ins. Co.,* 163 Conn. 127, 302 A.2d 284 (1972); *Rochon* v. *Preferred Accident Ins. Co.,* 118 Conn. 190, 171 A. 429 (1934). Paragraph 4 (a) expressly provides that notice be given in the event of an "occurrence." Paragraph 4 (b) provides that process must be forwarded to the insurer when a "claim is made or suit is brought." Paragraph 4 (c) does not expressly state when the duty to cooperate arises. A reading of paragraph 4 (c) leads to the conclusion that it applies to conduct of the insured in connection with proceedings subsequent to notice to the insurer of an occurrence, claim or suit. The defendant did not receive notice of the occurrence until suit was brought against the plaintiff. The defendant does

able information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.

"(b) If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

"(c) The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of injury or damage with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident."

not take issue with the plaintiff's conduct after it received notice. Thus, there can be no breach of the duty to cooperate.

I would affirm.

In this opinion ARMENTANO, J., concurred.