## ROY A. RYDINGSWORD *v.* LIBERTY MUTUAL INSURANCE COMPANY
### (14499)

PETERS, C. J., CALLAHAN, BORDEN, BERDON and NORCOTT, Js.

Argued September 25—decision released November 10, 1992

*Edward J. Holahan, Jr.,* with whom, on the brief, was *Kevin J. Gumpper,* for the appellant (defendant).

*Daniel D. Portanova,* with whom, on the brief, was *Dominick J. Rutigliano,* for the appellee (plaintiff).

CALLAHAN, J. The principal issue in this appeal is whether an insurer is entitled to set off against its liability for underinsured motorist coverage an amount equal to the value of an unrealized workers' compensation award for which the claimant has not yet chosen to apply. The defendant, Liberty Mutual Insurance Company, appeals from the judgment of the trial court modifying an award by an arbitration panel. The panel had credited the defendant insurer with an amount equal to the value of the unrealized workers' compensation claim for which the plaintiff, Roy Rydingsword, had not yet applied. The trial court vacated the setoff to the defendant and modified the award in favor of the plaintiff. The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse the judgment of the trial court.

The defendant claims that the trial court improperly found that: (1) the prospective recovery by the plaintiff of a workers' compensation specific indemnity award for a lumbar spine disability did not constitute an amount "payable" for the purposes of the defendant's underinsured motorist policy exclusion clause; (2) the arbitrators lacked any factual basis for determining the amount of the prospective compensation award; and (3) no compensation award becomes payable until the workers' compensation commissioner makes findings and renders an award.[1] We determine

---

[1] In his brief on appeal, the plaintiff claimed, in the alternative, that any offset for a prospective workers' compensation recovery would serve to reduce only the $300,000 coverage limit of the policy, and not the amount

that the arbitrators had the authority to award a setoff upon the presentation of substantial evidence on which to base their determination of the amount of this prospective award where the claimant had chosen to bypass the workers' compensation forum. We therefore conclude that the defendant insurer is entitled to a setoff for the prospective indemnity. Accordingly, we reverse the judgment of the trial court.

The parties stipulated to the underlying facts. The plaintiff, while in the course of his employment, was injured in an automobile accident caused solely by the negligence of a third party. The plaintiff suffered lacerations to his forehead that resulted in permanent scarring. He also sustained injuries to his lower back that resulted in a 20 percent permanent partial disability of the lumbar spine. The plaintiff recovered $20,000 from the liability insurer of the negligent driver, thereby exhausting the coverage limits of the policy of the tortfeasor.

At the time of the accident, the plaintiff was covered by a workers' compensation insurance policy. The workers' compensation commissioner for the fourth district approved the plaintiff's claims for medical expenses in the amount of $2274.36, and for lost wages in the amount of $5775.77. The commissioner subsequently approved the plaintiff's claim of permanent scarring of his forehead and awarded him $7044.51[2]

---

of his damages. This claim was never raised below. Accordingly, we do not review this alternative claim raised for the first time on appeal. " 'Only in the most exceptional circumstances will this court consider a claim that was not raised [below].' " *Dubois* v. *General Dynamics Corporation,* 222 Conn. 62, 68, 607 A.2d 431 (1992), quoting *Cahill* v. *Board of Education,* 187 Conn. 94, 99, 444 A.2d 907 (1982); see Practice Book § 4185.

[2] The workers' compensation commissioner awarded the plaintiff payment of eleven weeks compensation for the permanent disfigurement of the plaintiff's forehead. In its memorandum of decision, the trial court incorrectly stated the amount of the award as $7004.51. The amount of this scarring award is not in dispute on appeal. We adopt the figure of $7044.51.

pursuant to General Statutes § 31-308 (d).[3] The plaintiff did not pursue a workers' compensation claim for specific indemnity for the 20 percent disability of the lumbar spine as provided in § 31-308 (b).[4] The plaintiff, however, did not terminate his workers' compensation rights and his workers' compensation case remained open throughout the course of the proceedings below.[5]

At the time of the accident, the defendant had issued an automobile insurance policy to the plaintiff wherein it agreed to pay all sums that the insured would be legally entitled to recover as damages from the owner of an uninsured or underinsured vehicle because of injuries sustained by the insured as a result of an accident arising out of the use of such uninsured or underinsured vehicle. The policy provided uninsured/underinsured motorist coverage in the amount of $300,000. The policy provided further, however, that the limit of liability for uninsured/underinsured motorist coverage

---

[3] General Statutes § 31-308 (d) provides in pertinent part: "[T]he commissioner may award such compensation as he deems just, equal to sixty-six and two-thirds per cent of the average weekly earnings of the injured employee, but in no case more than the maximum weekly benefit rate as established in section 31-309, for any permanent significant disfigurement of, or permanent significant scar on, any part of the body up to two hundred and eight weeks . . . ." Subsequent to the time of the award in question here, this statute was amended in ways not relevant to this opinion.

[4] General Statutes § 31-308 (b) provides in pertinent part: "With respect to the following-described injuries the compensation, in addition to the usual compensation for total incapacity but in lieu of all other payments for compensation, shall be sixty-six and two-thirds per cent of the average weekly earnings of the injured employee, but in no case more than the maximum weekly benefit rate set forth in section 31-309, or less than fifty dollars weekly . . . (13) for the loss of the use of the back, that number of weeks which the proportion of incapacity represents to the maximum of five hundred and twenty weeks." Subsequent to the time of the award in question here, this statute was amended in ways not relevant to this opinion.

[5] The plaintiff was unwilling in this court to stipulate that he would not pursue a claim in the workers' compensation forum for the specific indemnity for the 20 percent disability of the lumbar spine.

would be reduced, inter alia, by all sums "paid or payable . . . under . . . workers' compensation law . . . ."

Pursuant to provisions of the policy, the plaintiff demanded that the defendant proceed with arbitration. The arbitration panel found that the plaintiff had sustained damages in the amount of $98,050.13. The panel also found that the defendant was entitled to a credit of $20,000, representing exhaustion of the third party tortfeasor's policy, and a credit of $7044.51, representing the workers' compensation scarring award. These credits are not at issue in this appeal.

A majority of the panel also agreed that the lumbar spine disability was work related and compensable under the workers' compensation policy coverage held by the plaintiff's employer. Using the formula set forth in § 31-308 (b), the majority determined that the plaintiff would be entitled to a workers' compensation specific indemnity award of $66,602.64.[6] The majority then calculated the present value of the indemnity to be $60,603.22.[7] The majority found that the prospective specific indemnity award was payable under the workers' compensation coverage and therefore allowed a credit in this amount to the defendant.[8]

The trial court concluded, however, that the defendant was not entitled to a setoff against the underinsured motorist award equal to the calculated value of

[6] See footnote 20, infra.

[7] The arbitrators obtained the discount to present value by consulting a table published by the state treasurer, Second Injury and Compensation Assurance Fund, which they noted is commonly used by workers' compensation commissioners throughout the state. The parties stipulated that the calculations by the arbitrators were mathematically correct.

[8] The arbitrators made a net award of $10,402.40 to the plaintiff, which was calculated as follows: total damages ($98,050.13) minus tortfeasor liability insurance proceeds ($20,000) minus scarring award ($7044.51) minus present value of the specific indemnity ($60,603.22).

the prospective workers' compensation specific indemnity award.[9] The trial court determined that the use of the words "sums" and "payable" in the exclusion clause of the uninsured/underinsured motorist coverage endorsement to the automobile insurance policy connoted the existence of specific obligations payable at present or in the future. The trial court concluded, therefore, that the exclusion did not apply to the specific indemnity that had not yet been awarded by the workers' compensation commissioner. Consequently, the trial court found that the determination of a specific value for the indemnity by the arbitration panel lacked a factual basis. The trial court vacated the credit for the value of the specific indemnity to the defendant and modified the award in favor of the plaintiff accordingly.

I

The defendant first claims that the trial court improperly concluded that the predicted recovery by the plaintiff of a workers' compensation specific indemnity award for a lumbar spine disability did not constitute an amount payable for the purposes of the exclusion clause contained in the underinsured motorist endorsement to the automobile insurance policy. The policy provided that "[t]he limit of liability shall be reduced by all sums . . . *paid or payable* because of the bodily injury under any of the following or similar law: (a) workers' compensation law . . . ." (Emphasis added.) This wording parallels the language of § 38-175a-6 (d) of the Regulations of Connecticut State Agencies, which provides in part "that the policy may provide for the reduction of limits to the extent that

[9] The trial court recognized in its memorandum of decision that the "substantial evidence" standard applied to its review of the factual findings by the arbitration panel. *Chmielewski* v. *Aetna Casualty & Surety Co.*, 218 Conn. 646, 656, 591 A.2d 101 (1991).

damages have been . . . paid or are *payable* under any workers' compensation or disability benefits law . . . ."[10] (Emphasis added.)

We have recently held that "[i]f damages are *paid* pursuant to the workers' compensation law, the uninsured motorist coverage may be reduced accordingly. General Statutes § 38-175c contains no mandate that uninsured motorist coverage benefits may not be reduced." (Emphasis added.) *Wilson* v. *Security Ins. Co.,* 213 Conn. 532, 538, 569 A.2d 40, cert. denied, 498 U.S. 814, 111 S. Ct. 52, 112 L. Ed. 2d 28 (1990).[11] General Statutes § 38a-334 (formerly § 38-175a) explicitly authorizes the insurance commissioner to adopt regulations relating to exclusions.[12]

## A

To counter the defendant's reliance on the language in the contract and the regulations, the plaintiff contends that the meaning of the phrase "sums . . . paid or payable" in the insurance policy is ambiguous and that therefore the phrase must be construed in favor of the insured. The general rule that "[w]hen the words of an insurance contract are, without violence, suscep-

---

[10] Section 38-175a-6 (d) of the Regulations of Connecticut State Agencies provides in pertinent part: "LIMITS OF LIABILITY. The limit of the insurer's liability may not be less than the applicable limits for bodily injury liability specified in subsection (a) of section 14-112 of the general statutes, except that the policy may provide for the reduction of limits to the extent that damages have been (1) paid by or on behalf of any person responsible for the injury, (2) paid or are payable under any workers' compensation or disability benefits law . . . ."

[11] " '[S]tatutory provisions relating expressly to uninsured motorist coverage apply also to underinsured motorists.' " *Nationwide Mutual Ins. Co.* v. *Pasion,* 219 Conn. 764, 766 n.3, 594 A.2d 468 (1991), quoting *American Motorists Ins. Co.* v. *Gould,* 213 Conn. 625, 628, 569 A.2d 1105 (1990).

[12] The plaintiff made no claim that § 38-175a-6 (d) of the Regulations of Connecticut State Agencies conflicts with General Statutes § 38a-334 (formerly § 38-175a). See *Kelly* v. *Figueiredo,* 223 Conn. 31, 36–37, 610 A.2d 1296 (1992).

tible of two interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted"; *Raffel* v. *Travelers Indemnity Co.*, 141 Conn. 389, 392, 106 A.2d 716 (1954); does not apply in this case because the contract is not ambiguous.

The Connecticut rule of construction of insurance policies is well settled. "If the terms of an insurance policy are of doubtful meaning, that permissible construction which is most favorable to the insured is to be adopted; but if they are plain and unambiguous the established rules for the construction of contracts apply, the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning, and the courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties." *Porto* v. *Metropolitan Life Ins. Co.*, 120 Conn. 196, 200, 180 A. 289 (1935).

We have previously defined "sum" and "payable" in the context of an exclusion of benefits clause in an insurance policy. " 'Sum' is defined as 'an indefinite or specified amount of money . . . .' Webster, Third New International Dictionary." *Griswold* v. *Union Labor Life Ins. Co.*, 186 Conn. 507, 515 n.4, 442 A.2d 920 (1982). Accordingly, we reject the assertion that the word "sums" as used in the insurance policy must only mean a specified sum of money. The plaintiff notes without further explication that the policy uses the word "sums" while the regulation uses the word "damages." Section 38-175a-3 of the Regulations of Connecticut State Agencies does not require the use of any particular talismanic words.[13] We discern no dispar-

---

[13] Section 38-175a-3 of the Regulations of Connecticut State Agencies provides: "The provisions herein required need not be stated in the language or form of these regulations, but the coverage afforded shall be of

ity between the exclusion allowed by § 38-175a-6 (d) and the exclusion contained in the policy of insurance issued by the defendant.

The plaintiff also contends that the words "paid or payable" constitute a unitary term. The defendant argues that the words "paid" and "payable" within the phrase "paid or payable" have different meanings. We agree with the defendant. No word or phrase in a statute is to be rendered mere surplusage. *Jutkowitz* v. *Department of Health Services,* 220 Conn. 86, 104, 596 A.2d 374 (1991). The same presumption applies to regulations promulgated by the agency charged with the implementation of the statute. "[W]ithin their scope the [insurance] regulations have the force of statutes. . . . In the construction of statutes, great deference is to be accorded to the construction given the statute by the agency charged with its enforcement." *Roy* v. *Centennial Ins. Co.,* 171 Conn. 463, 473, 370 A.2d 1011 (1976). Accordingly, the use by the insurance commissioner of the two words in the regulation must be viewed as intentional. Moreover, the policy language tracks the regulation and the words must be construed similarly.

"The word 'payable' clearly connotes that something need only be capable of being paid." *Griswold* v. *Union Labor Life Ins. Co.,* supra, 517. The trial court construed the word "payable" to connote only an amount of money previously awarded by the commissioner but not yet collected by the claimant. We reject as unduly restrictive a construction that would allow the exclusion only if the claimant has already secured an award from the workers' compensation commissioner but has

equal or greater benefit to the insured. Policies affording a coverage to which these regulations apply shall be deemed to afford insurance under such coverage at least equal to that required by these regulations."

not yet received actual payment in a fixed and determined amount at the time of the underinsured motorist arbitration hearing.[14]

We conclude that the phrase "sums . . . payable" is not ambiguous but plainly means an ascertained amount of money that is capable of being paid. The clear language of the exclusion clause of the policy must be read to include a workers' compensation specific indemnity award that may at some future time be paid or payable to a claimant who has chosen to bypass the workers' compensation forum and to proceed first to demand arbitration of a claim pursuant to underinsured motorist coverage.

B

The plaintiff's second argument in support of the trial court's construction of "sums . . . payable" is a Dickensian claim. He contends that he has the right to a final determination of an award by the workers' compensation commissioner before his underinsured motorist coverage carrier can receive a credit for such award even though he chooses not to submit his claim to the commissioner. The defendant's construction of the phrase "sums . . . payable" is, however, congruent with the underlying intent of General Statutes § 38a-334[15] and the implementing regulations promul-

---

[14] At oral argument, in response to inquiry by the court, the plaintiff was unable to offer any other factual scenario that, in his view, would fit the language of the statute and the regulation.

[15] General Statutes § 38a-334 (formerly § 38-175a) provides in pertinent part: "(a) The insurance commissioner shall adopt regulations with respect to minimum provisions to be included in automobile liability insurance policies issued after the effective date of such regulations and covering private passenger motor vehicles . . . . Such regulations shall relate to the insuring agreements, exclusions, conditions and other terms applicable to the bodily injury liability, property damage liability, medical payments and uninsured motorists coverages under such policies, shall make mandatory the inclusion of bodily injury liability, property damage liability and uninsured motorists coverages . . . ."

gated by the insurance commissioner.[16] "The public policy established by the uninsured motorist statute is that every insured is entitled to recover for the damages he or she would have been able to recover if the uninsured motorist had maintained a policy of liability insurance." *Harvey* v. *Travelers Indemnity Co.,* 188 Conn. 245, 249, 449 A.2d 157 (1982); *American Universal Ins. Co.* v. *DelGreco,* 205 Conn. 178, 197, 530 A.2d 171 (1987). It is a "time-honored rule that an injured party is entitled to full recovery only once for the harm suffered." *Peck* v. *Jacquemin,* 196 Conn. 53, 70 n.19, 491 A.2d 1043 (1985). "[A]n insured may not recover double payment of damages under overlapping insurance coverage." *Pecker* v. *Aetna Casualty & Surety Co.,* 171 Conn. 443, 452, 370 A.2d 1006 (1976).

Similarly, "the policy underlying [General Statutes] § 31-293 (a) of our Workers' Compensation Act . . . prohibits double recovery." *Gurliacci* v. *Mayer,* 218 Conn. 531, 567, 590 A.2d 914 (1991). "One of the purposes of the workers' compensation statute is 'the avoidance of two independent compensations for the injury.' " *Enquist* v. *General Datacom,* 218 Conn. 19, 26, 587 A.2d 1029 (1991); see generally J. Asselin, Connecticut Workers' Compensation Manual (1985) p. 272.

The trial court relied solely upon dicta in a New Jersey case referred to in *Englehardt* v. *New Hampshire Ins. Group,* 36 Conn. Sup. 256, 258, 417 A.2d 366 (1980), to support its public policy rationale for narrowly construing the exclusion clause.[17] The court in

---

[16] *Roy* v. *Centennial Ins. Co.,* 171 Conn. 463, 370 A.2d 1011 (1976) (in view of the broad discretion vested by statute in the insurance commissioner for the formulation of regulations, § 38-175a-6 (d) of the Regulations of Connecticut State Agencies was within the scope of his authority to promulgate).

[17] The New Jersey Superior Court stated that the majority of jurisdictions in the United States considers automobile insurance policy provisions that give an underinsured motorist carrier a credit for workers' compensation awards as void against public policy. *Sweeney* v. *Hartford Accident & Indemnity Co.,* 136 N.J. Super. 591, 594, 347 A.2d 380 (1975).

*Englehardt* also stated that "[r]egardless of how persuasive the public policy stated by the New Jersey court may be, this court cannot premise a decision on public policy in defiance of state statutes or valid administrative regulations." Id., 259. The court concluded that "the insurance policy provision providing for the deductibility of workmen's compensation awards from uninsured motorist coverage is valid and enforceable in Connecticut." Id., 260. Moreover, we discern no cogent public policy reason why the insurance commissioner would intend to prevent double recovery in tort but to allow it in workers' compensation. We read the word "payable" in the regulation to avoid this disparate result.

We recently addressed the issue of whether an employer was entitled to be reimbursed for the estimated value of a specific indemnity that the employee might be entitled to recover. *Gurliacci* v. *Mayer,* supra. The plaintiff in *Gurliacci* never made a claim for a specific award for permanent partial incapacity nor was there a determination of such a claim by the workers' compensation commission. Id., 566. Although we decided that, under the circumstances of that case, the trial court correctly refused to reimburse the employer for the present value of the specific award, we also concluded that the employer would be entitled to reimbursement should the plaintiff recover a third party award on retrial. Id., 569. Pursuant to § 31-293 (a), the employer could intervene in a subsequent action against a third party and thus become entitled to reimbursement from the net proceeds for benefits paid and the present value of probable future benefits.[18] See *Enquist* v. *General Datacom,* supra; *Love*

---

[18] General Statutes § 31-293 (a) provides in pertinent part: "In any case in which an employee brings an action against a third party in accordance with the provisions of this section, and the employer is a party defendant in such action, the employer may join as a party plaintiff in such action. . . . If such employer and employee join as parties plaintiff in such action and any damages are recovered, such damages shall be so apportioned that the

v. *J. P. Stevens & Co.*, 218 Conn. 46, 50, 587 A.2d 1042 (1991). Workers' compensation awards, however, are exempt from attachment and execution and there is no provision for third party intervenors in workers' compensation proceedings. General Statutes § 31-320. The underinsured motorist insurance carrier is thus unable to place a lien for reimbursement upon any future workers' compensation benefits awarded. Under current practices, the uninsured/underinsured motor vehicle insurance carrier must claim a credit of a workers' compensation award during the underinsured arbitration process, or not at all.

The plaintiff asserts that the workers' compensation commissioner must make a finding about the amount of a compensation award before an insurer can seek a credit in the underinsured arbitration. The plaintiff also claims, however, that he can choose to bypass the commissioner until a point of time subsequent to his recovery of underinsured motorist benefits. His argument thus renders the credit for workers' compensation recovery illusory. A claimant cannot elect to postpone a proceeding in the workers' compensation forum in favor of first making a demand for arbitration on the underinsured motorist insurance carrier and then argue that the value of the workers' compensation specific indemnity is speculative and therefore not a sum payable.

---

claim of the employer, as defined in this section, shall take precedence over that of the injured employee in the proceeds of such recovery, after the deduction of reasonable and necessary expenditures, including attorneys' fees, incurred by the employee in effecting such recovery. . . . No compromise with such third person by either employer or employee shall be binding upon or affect the rights of the other, unless assented to by him. For the purposes of this section the employer's claim shall consist of (1) the amount of any compensation which he has paid on account of the injury which is the subject of the suit and (2) an amount equal to the present worth of any probable future payments which he has by award become obligated to pay on account of such injury." Subsequent to the time of the award in question here, this statute was amended in ways not relevant to this opinion.

The Workers' Compensation Act delegates responsibility to the commissioner to calculate credit for unknown future benefits. *Love* v. *J. P. Stevens & Co.,* supra, 50. Section 31-293 (a) does not explicitly provide that such a determination must be made by the commissioner. See also *Gurliacci* v. *Mayer,* supra, 571. If the claimant deprives the underinsured motorist carrier of the benefit of a finding by the workers' compensation commissioner and the value of the unrealized claim is determined in the arbitration forum on the basis of substantial evidence, the claimant cannot be heard to complain.

II

The defendant next claims that the trial court improperly concluded that the arbitration panel had no factual basis for determining the value of the plaintiff's specific indemnity and that such a determination was speculative. We agree with the defendant.

Section 31-308 (b) (13) provides the formula to calculate the value of the specific indemnity for a back injury.[19] The calculation depends upon only two variables: (1) the claimant's weekly compensation rate; and (2) the proportion of disability of the claimant's back.[20]

Factual findings of an arbitration panel considering underinsured motorist coverage are subject to de novo review by the courts using a substantial evidence standard of judicial review. *Chmielewski* v. *Aetna Casualty & Surety Co.,* 218 Conn. 646, 660–61, 591 A.2d 101 (1991). The parties stipulated in the trial court that there was substantial evidence in the record to support

---

[19] See footnote 4, supra.

[20] The majority of the arbitration panel multiplied the plaintiff's weekly compensation rate of $640.41 times 104 weeks (20 percent of 520 weeks). The plaintiff had agreed in his previous two successful workers' compensation claims for lost wages and for scarring that $640.41 accurately represented his weekly compensation rate.

the findings of certain basic facts by the arbitration panel: that the plaintiff had suffered his injuries while in the course of his employment; that the plaintiff had suffered a permanent partial 20 percent disability of the back; that the plaintiff was covered by a policy of workers' compensation insurance; that the injuries sustained by the plaintiff were compensable under the terms of the workers' compensation policy; that his weekly compensation rate was $640.41; and that the computation of the present value of the special indemnity was mathematically correct.[21] The trial court disagreed, however, that the arbitrators' determination of the value of the specific indemnity was a reasonable conclusion drawn from these basic facts. Instead, it held that the determination of the amount of a specific indemnity lies solely within the province of the workers' compensation commissioner. We disagree. The plaintiff chose not to pursue his claim for a workers' compensation specific indemnity award. He thus avoided the only forum that he claims had the authority to value the specific indemnity. Consequently, the arbitration panel carried out its responsibilities and in the process assigned a value to the unrealized specific indemnity in order to assign a value to the credit to which the insurer was entitled. That value was based on substantial evidence.

The judgment is reversed and the case is remanded with direction to grant the application to confirm the arbitration award.

In this opinion the other justices concurred.

---

[21] We recognize that the arbitrators in this case had before them and fully reported to the trial court all of the values necessary for the calculation of the specific indemnity. Another case may involve fewer stipulations or less complete findings put on the record by arbitrators. See *Gurliacci* v. *Mayer*, 218 Conn. 531, 567, 590 A.2d 914 (1991).