[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARYJUDGMENT
Cella, McKeon Williams for plaintiff. CT Page 7570
Tyler Cooper Alcorn for defendant.
Factual Background
This action was brought by the plaintiffs, Mark and Terri Stanton, to recover a judgment from the defendant, Northbrook Property Casualty. The complaint alleges that on August 27, 1987, United Precision, Inc. placed into the stream of commerce a defective IB 15-3-4 Niagra Press Brake (also referred to as a punch press). The defendant, Northbrook Property Casualty, issued a general liability insurance policy to United Precision, Inc. with a policy period from January 17, 1987 through January 17, 1988. On January 15, 1991 the punch press injured Mark Stanton. The plaintiffs brought a product liability suit against United Precision, Inc., and judgment was entered in plaintiff's favor in the amount of $810,000 on June 9, 1993. On July 16, 1994, the plaintiffs filed the instant one count complaint seeking to recover the amount of the judgment from the defendant through the policy issued to United Precision, Inc.
On April 6, 1994, the defendant filed a motion for summary judgment on the grounds that placing the punch press into the stream of commerce is not an "occurrence" as defined by the policy, and that the injury occurred after the policy had expired. The defendant filed in support of its motion for summary judgment the supporting memorandum, the plaintiffs' responses to requests for admissions, and portions of the insurance policy in question. There were no accompanying affidavits. The plaintiffs, on April 19, 1994, filed an objection to the defendant's motion for summary judgment along with a supporting memorandum. The plaintiffs filed no affidavits.
Legal Discussion
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Connecticut Bank Trust Co. v. Carriage Lane Assoc.,219 Conn. 772, 781, 559 A.2d 334 (1991). The "party seeking summary judgment has the burden of showing the nonexistence of any material fact." Id. "[A] party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." Id.
CT Page 7571
The plaintiffs argue that the defendant's motion for summary judgment should be denied on procedural grounds for failure to submit a supporting affidavit. Practice Book § 380 requires "[a] motion for summary judgment [to] be supported by such documents as may be appropriate, including but not limited to affidavits, . . . written admissions and the like." Practice Book § 380. In support of its motion the defendant filed written admissions, and portions of the insurance policy in question. Practice Book § 381 requires that affidavits "must be made on personal knowledge, . . . and must show the affiant is competent to testify to all matters stated in the affidavit." Dowling v. Kielak, 160 Conn. 14,17, 273 A.2d 716 (1970). Since this motion concerns contested language in the policy, there would be nothing within the personal knowledge of the defendant to which it could attest. Also, the intent of the parties is determined by the language used in the policy. See Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573,583, 573 A.2d 699 (1990).
The defendant argues that the injuries to the plaintiff occurred outside of the policy's period of coverage, and that placing a product in commerce is not an "occurrence" as defined under the terms of the policy. The plaintiffs contend that "occurrence," as defined by the policy, includes placing a defective product into the stream of commerce. The plaintiffs also argue that the bodily injury need not take place within the policy period, but within the "effective period" of the insurance. Furthermore, the plaintiffs assert that interpretation of the policy language is necessarily a question of fact.
The Supreme Court has stated that "construction of a contract of insurance presents a question of law for the court." AetnaLife Casualty Co. v. Bulaong, 218 Conn. 51, 58, 588 A.2d 138
(1991). "An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy." Stephan v.Pennsylvania General Ins. Co., 224 Conn. 758, 763,621 A.2d 258 (1993), quoting Schultz v. Hartford Fire Insurance Co.,213 Conn. 696, 702, 569 A.2d 1131 (1990).
The policy in question obligates the defendant to pay on behalf of United Precision, Inc. all damages incurred because of a "bodily injury" caused by an "occurrence." An "occurrence" is defined in the policy as "an accident including continuous orCT Page 7572repeated exposure to conditions which results in bodily injury." (Emphasis added.) If this policy language is "without violence, susceptible of two interpretations, that which will sustain the claim and cover the loss will be adopted." Rydingsword v. LibertyMutual Ins. Co., 224 Conn. 8, 14-15, 615 A.2d 1032 (1992). "[A]ny ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy." Stephan v. Pennsylvania General Ins. Co., supra, 224 Conn. 763. "This rule of construction may not be applied, however, unless the policy terms are indeed ambiguous."Id., 764. "[T]he mere fact that the parties advance different interpretations of the language in question `does not necessitate a conclusion that the language is ambiguous.'" Id., quoting Kellyv. Figuerdo, 223 Conn. 31, 35, 610 A.2d 1296 (1992). If the terms are unambiguous the court must give the "natural and ordinary meaning to plain and unambiguous language in the provisions of an insurance contract." Rydingsword v. Liberty MutualIns. Co., supra, 224 Conn. 15.
"The ordinary meaning of `accident' is a `sudden event or change occurring without intent or violation through carelessness, unawareness, ignorance, or a combination of causes and producing an unfortunate result.'" Imperial Casualty Indemnity Co. v.State, 8 Conn. L. Rptr. 476, 477 (March 10, 1993 Wagner, J.) The defendant claims that the plaintiffs' interpretation cannot be correct since the act of selling the punch press was intentional, and therefore not an accident.
The plaintiffs' construction would allow recovery for the mere possibility of injury during the time the policy is in force, yet the phrase "`continuous repeated exposure to conditions which result in [bodily injury]' appears to contemplate a developing condition that may be difficult to locate in a specific time frame."Plasticrete Corp. v. American Policyholders Ins., 184 Conn. 231,237, 439 A.2d 968 (1981). The Connecticut Supreme Court interpreted almost identical language in Tiedemann v. Nationwide Mutual FireInsurance Co., 164 Conn. 439, 324 A.2d 263 (1973) where the negligent construction of a fireplace by the insured, during the period the policy was in force, resulted in a fire two months after the expiration of the policy. The court stated that such a construction "would have the court interpret the word `accident' to encompass both the cause and effect. . . . This interpretation is unacceptable. . . . [T]he term `accident' is to be construed in its ordinary meaning of an unexpected happening. The `accident' was the event causing the injury, not the cause of that event." CT Page 7573 (Citation omitted.) Id., 445.
The facts of the present case are substantially similar toTiedemann, supra. Both cases involve a dormant defect which is extant during the policy period, but fails to cause injury until after the expiration of the policy. The plaintiffs' argument tries to cast the cause, a defective product, as the effect, thus bootstrapping coverage which had expired three years previously.
Interpreting the same language, the United States District Court for the District of Connecticut similarly concluded the language "unambiguously provides for coverage based upon the occurrence during the policy period of an injury in fact." AetnaCasualty Surety Co. v. Abbott Laboratories, Inc., 636 F. Sup. 546,548 (D. Conn. 1986). The court noted that the court of appeals "rejected the . . . argument that exposure to a potentially injurious product is sufficient to trigger coverage, explaining that `[i]njury cannot be read as the equivalent of exposure, because the policy contemplates injury caused by exposure; since a cause normally precedes its effect, it is plain that an injury could occur during the policy period although the exposure that caused it preceded that period.'" (Emphasis added.) Id., 549, quoting AmericanHome Products Corp. v. Liberty Mutual Ins. Co., 748 F.2d 760,766 (2d Cir. 1984). The court held that the insurers were liable for all damages resulting from injuries that occurred during the coverage period, but were not responsible for those injuries "that occurred before or after the coverage period of such policies."Id., 550.
The plaintiff next argues that the language within the policy, that defines "bodily injury" as that "sustained by any person which occurs during the effective period of this insurance," serves to extend the policy period to cover the plaintiff's injuries. The term "effective" is undefined in the policy, therefore, the plaintiff suggests that Webster's Ninth New Collegiate Dictionary definition, "producing a decided, decisive or desired [result]," requires coverage since the desired result of the policy was to ensure against negligent and inappropriate conduct. While "Connecticut courts have consistently referred to dictionary definitions to interpret words used in insurance contracts", HolyTrinity Church v. Aetna Casualty Surety Co., 214 Conn. 216
224 n. 5, 571 A.2d 107 (1990); "`it is a basic principle of insurance law that policy language will be construed as laymen would understand it.'" Id., quoting Cody v. Remington ElectricShavers, 179 Conn. 494, 497, 427 A.2d 810 (1980). While the CT Page 7574 plaintiff's definition of "effective" is a valid one in some contexts, using it in this instance would be to "indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties." Plainville v. Travelers Indemnity Co., 178 Conn. 664, 675,425 A.2d 131 (1979). The definition of "effective" required by the context in which it is used is "taking effect: valid, operative." Webster's Third New International Dictionary, 724. Under this definition, the "effective" period of the insurance is that in which it is operative, the policy period of January 17, 1987 through January 17, 1988.
The terms of the insurance policy in question are unambiguous, "a fact which is not altered because the parties contend for different meanings." Tiedemann v. Nationwide Mutual FireInsurance Co., supra, 164 Conn. 445. "It is axiomatic that no insurer is bound to provide indemnification . . . beyond the scope of coverage described in the insurance contract, the policy."Plasticrete Corp. v. American Policyholder Insurance Co.,184 Conn. 231, 235 36, 439 A.2d 968 (1981). Here, the plaintiff's injuries occurred three years after the expiration of the policy period, and accordingly, the defendant's motion for summary judgment must be granted.
Conclusion
Based on the foregoing, the defendant's Motion For Summary Judgment (#108) is granted.
HARTMERE, JUDGE