[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON MOTIONS TO QUASH
At a case management conference conducted by this court on January 8, 2002, counsel for several hospitals that had been served by the defendant St. Mary's Hospital ("St. Mary's") with subpoenas duces tecum stated that a hearing was needed to determine whether the subpoenas should be quashed because the information requested was protected by Connecticut's Peer Review Statute, Conn. Gen. Stat. § 19a-17b, or for other reasons. The plaintiff in this case, Dr. Mary Jane Brackett, has sued St. Mary's Hospital seeking money damages because St. Mary's suspended her hospital privileges in 1997. St. Mary's has explained that it seeks information from other hospitals where Dr. Brackett worked to counter her claims that her alleged lost earnings were caused by her suspension rather than by other causes that would be revealed by the information subpoenaed.
This court entered a case management order scheduling an evidentiary hearing on the issue for January 22, 2002. The text of that order, in relevant part, is as follows:
 A hearing of all pending motions to quash subpoenas to witnesses will be conducted on January 22, 2002 at 2:00 in courtroom 3C, 400 Grand [St.], Waterbury. Counsel should be prepared to present at that hearing all evidence on which they rely in connection with these motions. Counsel may submit any stipulated facts or exhibits and any pre-hearing briefs by noon on January 18, 2002.
The plaintiff, Mary Jane Brackett, M.D. filed no motion to quash. Her counsel was present at the hearing and did not advocate any outcome as to any of the motions or portions thereof.
ISSUES
Bristol Hospital, Waterbury Hospital, Day Kimball Hospital ("Day Kimball"), and Midstate Medical Center ("Midstate") have filed motions to CT Page 1297-a quash the subpoenas described above.
At the hearing, counsel for St. Mary's Hospital, the issuer of the contested subpoenas, announced that St. Mary's had agreed to change its requests for documents to be produced to the following items, in lieu of the items listed in the text of the subpoenas issued. Counsel for St. Mary's also stated that it had reached an agreement with Bristol Hospital. That agreement was not put on the record by counsel.
St. Mary's revised list of subpoenaed documents is as follows. These descriptions replace the descriptions of the documents sought in the subpoenaes duces tecum.
1(a). Personnel File
 1(b). Credentials File
* * *
 A. All of Dr. Brackett's applications for appointment and reappointment, with supporting data (but excluding evaluation letters);
 B. All Delineation of Privileges forms (including medical staff membership classification and all privilege checklists);
 C. Verification of whether staff privileges have been terminated or restricted, including the specific restriction(s) imposed, if any. (We would also like to know the date of any action taken).
 2. Quality Assurance Files Any and all statistical data maintained on Dr. Brackett with regard to quality indicators.
 3. Admission Data Admission data as requested in the Subpoena (including ICD9 codes, DRG codes, procedures performed, patient zip code, payor type, and whether inpatient or outpatient), to the extent reasonably available from Waterbury's computer database, dating back to 1995.
 4. Rules, Regulations and Medical Staff Bylaws The Hospital's Rules, Regulations and Medical Staff Bylaws dating back to 1995."
The movants have asserted that some of the documents sought in the revised text set forth above are protected from discovery by Connecticut's medical peer review statute, § 19a-17b. They have also asserted that some of the requests for documents are either too CT Page 1297-b burdensome and unreasonable or unlikely to lead to admissible evidence.
AGREEMENTS
The parties stated that they had reached the following agreements. The numbers used below correspond to the topics listed above:
 1(a). Waterbury Hospital represented that it had no such files and will so state in writing, sworn to by a competent affiant.
 2. Waterbury Hospital represented that it has nothing responsive except DRG statistics and will supply them.
 3. Waterbury Hospital will produce those admission data records accessible by a computer run but objects to any records for which hand-tabulation or redactions would be necessary. Day Kimball will respond that Dr. Brackett admitted no patients. Request is moot as to Midstate, as Dr. Brackett worked there in 1991.
 4. Waterbury, Day Kimball and Midstate Hospitals agreed to provide rules, regulations and bylaws to St. Mary's.
EVIDENCE
None of the movants presented evidence in support of any claims that the information sought had been part of a peer review process or on any other ground relied upon in their motions to quash. Day Kimball Hospital had appended to its brief an affidavit. When the court inquired whether St. Mary's agreed to submission of this document in evidence, St. Mary's counsel responded in the negative. Because an affidavit is most certainly hearsay, the court sustained the objection and pointed out that this Court's order set forth above stated that the proceeding concerning the motion to quash was to be a hearing, not simply oral argument, since some of the matters in controversy might require testimony to establish what records existed, how they were created, and what their relationship was to peer review. The court recessed to allow counsel for the movants an opportunity to telephone any necessary witnesses. None was presented.
MOTION TO QUASH
Practice Book § 13-28(e) provides that a party served with a subpoena accompanied by a command that the deponent produce and permit inspection of designed items may file a motion to quash or modify the subpoena "if it is unreasonable and oppressive or if it seeks the production of materials not subject to production. . . ." CT Page 1297-c
GROUNDS ASSERTED
The movants object to producing some documents defined in the subpoenas duces tecum, notably, documents concerning each patient admitted to their facility by Dr. Brackett, on the grounds that the documents are not material to the subject matter involved in the pending action and are "not reasonably calculated to lead to the discovery of admissible evidence," the general standards for discovery set forth at Practice Book § 13-2. They also assert that the request is too burdensome and oppressive and because Practice Book § 13-5 authorizes limiting discovery on the former ground; and Practice Book § 13-28(e) authorizes an order quashing a subpoena on the latter ground.
The movants also assert that St. Mary's is not entitled to production pursuant to a subpoena duces tecum of some of the documents identified above because the provisions of Connecticut's medical peer review statute, Conn. Gen. Stat. § 19a-17b, preclude such discovery.
The Connecticut Supreme Court ruled in Babcock v. Bridgeport Hospital,251 Conn. 790, 847-849 (1999), that a party asserting that discovery of certain facts is barred by the Connecticut medical peer review statute bears the burden of proving facts that establish the applicability of that statute to the documents at issue. The Court noted in Babcock v.Bridgeport, supra, 251 Conn. 821-22, that not all documents that are used by peer review committees, as that term is defined in the medical peer review statute, are protected from discovery; rather, the statute creates a privilege only for documents that relate to peer review as that term is defined at Connecticut General Statutes § 19a-17b (a)(2). Id. Noting that the privilege for medical peer review, like other privileges, serves as a limitation on discovery of the truth, the Court found that the privilege should be interpreted only in accordance with the actual wording of the peer review statute, and not beyond the words of that statute,Babcock v. Bridgeport Hospital, supra, 251 Conn. 820-826.
The disputes in the present case concern provisions in the peer review statute that were not at issue in Babcock; however, the general principles of statutory construction discussed by the Supreme Court in that case certainly apply.
DISPUTED ITEMS
Day Kimball Hospital
1a. Personnel file and 1b. Credential file
The movants assert that Dr. Brackett's application for appointment at CT Page 1297-d Day Kimball is not discoverable both because it is remote in time and therefore not likely to lend to admissible evidence, and because it is protected by the medical peer review statute.
Dr. Brackett had admitting privileges at Day Kimball from 1979-80, more than twenty years ago. St. Mary's asserts that the information contained in such documents is material to the issue of Dr. Brackett's claim that her suspension from St. Mary's has prevented her from obtaining privileges elsewhere. Day Kimball has agreed to provide the information expressly authorized by Conn. Gen. Stat. § 19a-17b (d)(4): "disclosure of the fact that staff privileges were terminated or restricted, including the specific restriction imposed, if any." Documents concerning the plaintiff's application for privileges in 1979-80 are simply too remote in time to meet the general standard for discovery with regard to this issue
The motion to quash is granted as to this item.
2. Quality Assurance Files
Day Kimball has stated in its brief that it has none for Dr. Brackett. It shall provide St. Mary's with a statement to this effect signed by a competent affiant.
3. Admission Data
This request is burdensome and oppressive. It would require Day Kimball to search through twenty-year-old patient records to find each record that applied to Dr. Brackett. The motion to quash is granted as to this item.
Midstate and Waterbury Hospitals
1a. Personnel file and 1b Credentials file
Midstate and Waterbury Hospitals provided no evidence from which this court could determine when Dr. Brackett was affiliated with those hospitals. They base their motions to quash solely on the provisions of the peer review statute. At § 19a-17b (d), the statute provides that "[t]he proceedings of a medical review committee conducting a peer review shall not be subject to discovery or introduction into evidence in any civil action for or against a health care provider arising out of the matters which are subject to evaluation and review by such committee, and no person who was in attendance at a meeting of such committee shall be permitted or required to testify in any such civil action as to the content of such proceedings; provided that the provisions of this CT Page 1297-e subsection shall not preclude (1) in any civil action, the use of any writing which was recorded independently of such proceedings. . . ." Section 19a-17b (a)(4) includes in the definition of "medical review committee" "any hospital board or committee reviewing the professional qualifications or activities of its medical staff or applicants for admission thereto."
Midstate and Waterbury Hospitals assert that the applications of Dr. Brackett for privileges at their hospitals are protected from discovery by the medical peer review statute.
As the Supreme Court ruled in Babcock v. Bridgeport Hospital, supra,251 Conn. 821-22, the peer review statute does not immunize from discovery all documents that have been considered by a medical review committee. The portion of the statute cited above expressly does not extend protection from discovery to documents recorded independently of a peer review proceeding. St. Mary's does not seek either the letters of recommendation supplied by other physicians or the "proceedings," that is, the content of the discussions of Dr. Brackett by the credentials committee. It seeks only the application and other documents created and compiled not by the committee but by Dr. Brackett in connection with her application for privileges at each hospital. The Supreme Court has explained that:
 [i]n light of the statute's language and legislative history, we conclude that the privilege afforded by § 19a-17b applies to the substantive exchanges that transpire during the course of a peer review meeting, and that confidentiality is provided for such exchanges, but not for any knowledge gained by a committee member independent of that meeting. . . . We note that often such exchanges may be based upon documents that were submitted to the members of the committee engaging in peer review, but which were generated for more than one purpose. We conclude that the peer review privilege applies to those documents provided they were created principally for the purpose of peer review.
Babcock v. Bridgeport Hospital, supra, 251 Conn. 824-25.
An application submitted by a physician seeking admitting privileges at a hospital has no discernible purpose other than to seek peer review to determine whether the applicant should be allowed to practice at the reviewing hospital. Under the standard announced in Babcock v. BridgeportHospital, supra, Dr. Brackett's applications would seem to be protected CT Page 1297-f from discovery provided the civil action in which they are sought is one to which the protections of the peer review statute apply.
Those civil actions, as defined in § 19a-17 (d), are "any civil action for or against a health care provider arising out of the matters which are subject to evaluation and review of such committee." The lawsuit in which this discovery dispute arises is one "against a health care provider." It is questionable, however, whether it is one "arising out of the matters which are subject to evaluation and review of" the credentials committee of Midstate and Waterbury Hospitals. The subject matter of Dr. Brackett's suit is her suspension not by Midstate and Waterbury, but by St. Mary's. The issue that St. Mary's raises is whether Dr. Brackett's claimed inability to obtain affiliation with other hospitals is caused by her suspension or by other facts concerning her credentials.
Babcock v. Bridgeport Hospital, supra, 251 Conn. 790, a medical malpractice case brought against the hospital that invoked the peer review statute, was clearly "a civil action . . . against a health care provider arising out of the matters which are the subject to evaluation and review" of the peer review committees of the defendant hospital. The plaintiff in that case claimed that the defendant hospital had failed to disclose the presence and risk to elective surgery patients of an epidemic of methicillin-resistant staphylococcus aureus infection in the hospital. Babcock thus did not involve the issue whether the civil action in which discovery was sought was one to which the peer review protections apply. The parties have not cited any case in which the peer review privilege was applied in a case in which the claim was against an entity other than the hospital from which discovery was sought.
Midstate and Waterbury have argued in their briefs and at oral argument as though the limiting words cited above did not exist in the peer review statute. They maintain, in effect, that if a physician's application to a credentials committee could not be discovered in a suit against the hospital that had granted admitting privileges, it cannot be discovered in any other kind of suit either.
The scope of the peer review statute is to be determined by applying well-established principles of statutory construction to ascertain and give effect to the apparent intent of the legislature. In seeking to discern that intent, courts must look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same subject matter. Babcock v. Bridgeport Hospital,
supra, 251 Conn. 819; State v. Burns, 236 Conn. 18, 22-23 (1996). CT Page 1297-g Statutes that create privileges are to be analyzed with the additional perspective that such a privilege "has the effect of withholding relevant information from the factfinder" Babcock v. Bridgeport Hospital, supra,251 Conn. 819. "Accordingly, although a statutory privilege must be applied so as to effectuate its purpose, it is to be applied cautiously and with circumspection because it impedes the truthseeking function of the adjudicative process." Id.
The peer review statute, on its face, bars access to the proceedings of a medical review committee only in certain kinds of civil actions, that is those "for or against a health care provider arising out of the matters which are subject to evaluation and review by such committee. . . ." § 19a-17b (d). No part of a statute is to be regarded as surplusage; State v. Murray, 254 Conn. 472, 492 (2000); Westport TaxiServices, Inc. v. Westport Transit District, 235 Conn. 1, 40 (1995);Rydingsword v. Liberty Mutual Ins. Co., 224 Conn. 8, 16 (1992); and this court cannot therefore ignore, as the movants urge, the limiting language cited. In the provisions immediately following the statement of scope cited above, subsection 19a-17b (d) goes on to except certain information from the privileges, for example, "any writing which was recorded independently of such [medical review] proceedings" in "any civil action." The use of "any civil action" in the enumeration of these latter provisions suggests that the exclusions from privilege apply even in civil actions "for or against a health care provider arising out of the matters which are subject to evaluation and review by such committee."
The inclusion of language limiting the kinds of civil actions to which the peer review privilege applies must be given effect. In 1976, a prior version of the statute, House Bill No. 5826, § 4 did not contain this limiting language but would have provided that "[t]he proceedings and records of a medical review committee shall not be subject to discovery or introduction into evidence in any civil action against a health careprovider . . ." (Emphasis supplied.). See Babcock v. Bridgeport Hospital,
supra, 251 Conn. 823. The legislature did not adopt this broad language but limited the kinds of civil actions to which the protection from discovery applies. The General Assembly thus made a conscious choice not to apply the peer review privilege in all civil actions but only in those arising from the institution's peer review in cases involving that peer review, apparently to promote candor in discussion of quality issues in an institution which had an ability to address indications of incompetence or negligence in the incident at issue. Id. 790.
At the hearing, Waterbury Hospital presented this court with a decision, State ex rel. Hospital v. Sanders, ___ S.E.2d ___, Docket No. 29770 (W.Va. November 9, 2001), which it asserted was on point. In fact, that case concerned the effort by a medical malpractice plaintiff to CT Page 1297-h obtain the application for hospital privileges of the doctor whose conduct was the basis of the malpractice action. The plaintiff claimed that the hospital had been negligent in granting privileges to the defendant doctor. The civil action at issue in State ex rel. Hospital v.Sanders was thus indisputably one "arising out of the matters which are subject to evaluation and review by such organization," the scope of the West Virginia peer review privilege statute, W. Va. Code § 30-3C-3 (1980).
Connecticut General Statutes § 19b-17 (d) does not extend the privilege against discovery for "[t]he proceedings of a medical review committee conducting a peer review" to all civil actions but only to those explicitly described: "civil action[s] for or against a health care provider arising out of the matters which are subject to evaluation and review by such committee." The suit before this court does not arise out of the matters which were subject to evaluation and review of the credentials committees of Midstate or Waterbury Hospitals, and the movants have therefore not established that the privilege against disclosure applies in this case.
2. Quality assurance files
As has been mentioned above, Waterbury Hospital has agreed to provide an affidavit from a competent affiant certifying that no such documents exist as to Dr. Brackett. Since the peer review statute does not apply, Day Kimball's motion to quash is denied with respect to this item.
3. Admission Data and 4. Rules Regulations and Medical Staff Bylaws
These items were resolved as reflected above under the heading "Agreements." The Court hereby sustains Waterbury's objection to providing documents other than those obtainable by a computer run as described in the agreement. St. Mary's further request is unduly burdensome and oppressive.
Conclusion
The movants shall comply with the terms of the agreements reflected above. Day Kimball's motion to quash is granted as to paragraph 3 of the revised text of the subpoena duces tecum. The motions to quash of Waterbury Hospital and Midstate Medical Center are denied as to revised paragraphs 1a and 1b, with the limitation agreed to by St. Mary's for recommendations by other physicians. Waterbury Hospital's motion to quash is granted as to items requested in Item 3 that are beyond the scope of the agreement set forth at page 5 above. CT Page 1297-i
____________________ Beverly J. Hodgson Judge of the Superior Court